1553

Robert T. GRIFFIN and Teri B. Griffin, Respondents v. Linda B. VAN NORMAN and Mack Gregory d/b/a Mack Gregory Pest Eliminators and Mack's Pest Eliminators, Defendants, Of Whom Linda B. Van Norman is also a Respondent and Mack Gregory d/b/a Mack Gregory Pest Eliminators and Mack's Pest Eliminators is Appellant.

(397 S.E. (2d) 378)

Court of Appeals

CURETON and GOOLSBY, JJ., dissented and filed opinions.

W. Howard Boyd, Jr., of Rainey, Britton, Gibbes & Clarkson, Greenville, for respondents.

*Adam Fisher, Jr.,* and *Ray D. Lathan,* of *Lathan & Barbare,* Greenville, *for respondents.*

Heard April 11, 1990.

Decided Oct. 8, 1990.

LITTLEJOHN, Acting Judge:

Robert T. Griffin and Teri D. Griffin (Home Buyers) initiated this action seeking actual and punitive damages for alleged fraudulent representations on the part of defendants Linda B. Van Norman (Home Seller) and Mack Gregory d/b/a Mack Gregory Pest Eliminators and Mack's Pest Eliminators (Exterminator). The gravemen of the Home Buyers' complaint is that both the Home Seller and the Exterminator falsely represented that a house purchased by them was free of termites and moisture damage.

The Exterminator filed a general denial. The Answer of the Home Seller is twofold. The first is denominated "For a First Defense" (general denial) and the second is denominated "For a Second Defense and By Way of Cross Claim." In the Cross Claim the Home Seller alleges: "That any damage suffered by the Plaintiffs in this matter is due to the negligence or misrepresentation of the Defendant, Mack Gregory." The Prayer for Relief asks "that the Court find that the Defendant, Mack Gregory, d/b/a Mack's Pest Eliminators be held responsible for any damages suffered by the Plaintiffs." The Exterminator filed an Answer to the Cross Claim asserting a general denial and alleging the Cross Claim did not allege facts sufficient to constitute a cause of action.

This litigation grew out of the fact that the Home Sellers employed the Exterminator to provide a Wood Infestation Report required by the Home Buyers before the sale of the house could be completed. After the sale was consummated, it developed that the report was false.

The Exterminator paid the Home Buyers $11,000 for a covenant not to execute. The Home Seller paid the Home Buyers $5,000 for a covenant not to execute. Neither admitted liability; each obviously "bought his peace." Thereafter, the Home Buyers were no longer a party to the litigation. The Cross Claim proceeded to a trial before the judge without a jury. The judge ruled in favor of the Home Seller

against the Exterminator, awarding judgment in the amount of $5,000. The Exterminator appeals. We affirm.

It would have been well for the parties remaining in the litigation to have redrafted the pleadings, but failure to provide new pleadings need not be fatal to the claim. The remaining parties by reason of the original Complaint, the Answers and Cross Claim, and the Answer to the Cross Claim were alerted to the issues for trial by the judge. The Complaint serves merely as a background to this litigation. Allegations in a Complaint denied in answer are evidence of nothing.

Prior to the trial, counsel for the Exterminator moved to dismiss the Cross Claim on the ground that the allegations of the Cross Claim do not state facts sufficient to constitute a cause of action and on the grounds that (1) the only damages sustained or claimed by the Home Seller are $5,000 which was paid for a covenant not to execute and (2) in making such payment she was simply a volunteer. The motion was denied with the judge holding that it could not be said as a matter of law that the Home Seller was not entitled to recover on any theory. He held the pleadings sufficient under Rule 8 of S.C.R.C.P. We agree. The exceptions addressed to this issue are without merit.

It was the contention of the Exterminator in the court below and here that the Exterminator and the Home Seller were joint tortfeasors. The trial judge found that the Home Seller "does not base her claim against Mack upon an alleged right of indemnification from joint tortfeasors. "Rather, she claims that any damages suffered by the Griffins were the result of Mack's sole negligence or misrepresentation." The judge further found "that the loss suffered by the Griffins [Home Buyers] was occasioned solely by the wrong of the defendant Mack [Exterminator]." Furthermore, he found "there is no evidence that Van Norman [Home Seller] took an active role in the alleged fraud perpetuated upon the Griffins." The evidence proves conclusively that she had no knowledge that the certification of the Exterminator was false. The Exterminator submits no proof to the contrary. The findings and conclusion of the judge are amply supported by the evidence.

## I.

In *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, Opinion No. 1552 (S.C. Ct. App. filed October 8, 1990), decided concurrently with this case, we held, quoting *Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971), that if the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such expenses should be treated as the legal consequence of the original wrongful act and may be recovered. We further held that recovery may be had at law in the form of special damages, or in equity in the form of equitable indemnity. *Id.* We overruled *JKT Company, Inc. v. Hardwick*, 284 S.C. 10, 325 S.E. (2d) 329 (Ct. App. 1984), which held that the right to indemnity was to be determined on the face of the pleadings, rather than by facts in evidence at trial.

In *Town of Winnsboro*, the issue of liability to the third party was tried on the merits, whereas, in this case, the third party's suit was settled before trial. The relief sought in *Town of Winnsboro* was recovery of attorney's fees incurred in the successful trial defense of the third party's action. Here, the Home Seller seeks recovery of the sum paid to settle the Home Buyer's action. We view these as distinctions without a difference.

*Addy v. Bolton* allows recovery of "expenses" when the act of the wrongdoer involves the innocent defendant in litigation or places him "in such relation with others as makes it necessary to incur expenses to protect his interest." The *Addy* opinion does not confine "expenses" to attorney's fees. "Expenses" under the *Addy* rule include any costs which are reasonably necessary to defend litigation or otherwise protect the innocent party's interest.

We hold that the cost of settling a case is recoverable under the rule (1) if the settlement is bona fide, with no fraud or collusion by the parties; (2) if, in the circumstances, the decision to settle is a reasonable means of protecting the innocent party's interest; and (3) if the amount of the settlement is reasonable in light of the third party's estimated damages and the risk and extent of defendant's exposure if the case is tried.

In this case, all three elements are satisfied. The settlement of Home Buyers' action was bona fide. The decision to settle was reasonable in the circumstances, because it "bought peace" and avoided a costly trial which might possibly result in a verdict adverse to the Home Seller. Finally, the amount of settlement was reasonable. In all likelihood, it was less than the costs and attorney's fees Home Seller would have incurred in a defense at trial—even a successful defense.

The contention that the Home Seller "was listed as a defendant in the action and was required to defend against allegations of fraud on her part" is not persuasive because the allegations of the Complaint listing her as a defendant and alleging her to be guilty of fraud are not determinative of whether she has the right to indemnity. Rather, such a determination is based on the evidence and the facts found by the fact finder. Where, as here, the person seeking indemnity was exonerated at trial from all liability, indemnity is allowed. *See Addy v. Bolton, supra; Town of Winnsboro v. Wiedeman-Singleton, Inc., supra.*

## II.

In granting the Home Seller recovery of the cost for settling the Home Buyers' suit, the trial court relied in large measure on *Stuck v. Pioneer Logging Machinery, Inc.,* 279 S.C. 22, 301 S.E. (2d) 552 (1983). Therein, the Supreme Court, speaking on the matter of indemnification, said:

> We note that the modern trend concerning the right to indemnity is to look to principles of equity. According to equitable principles, a right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join. 41 Am. Jur. (2d) *Indemnity* Section 2 (1968); 42 C.J.S. *Indemnity* Section 21 (1944).

Although the trial court reached the correct judgment on the facts of the instant case, its reliance on *Stuck* was misplaced. In *Stuck,* Hastings (the third party) sued Stuck (the second party) and his driver for damages arising from a

motor vehicle collision. The jury returned a verdict of negligence against Stuck. Pending appeal, Stuck settled the claim with Hastings for an amount less than the verdict. Stuck then brought a separate action against Pioneer (the first party) for indemnification of its litigation expenses, including the settlement amount. Pioneer had sold Stuck the vehicle involved in the collision.

Stuck alleged that Pioneer had warranted the vehicle as roadworthy, when in fact it had several latent defects, including a defective rear axle assembly, which made it an inherently dangerous product. Stuck further alleged that these defects had caused the accident.

The trial court in *Stuck*, sitting as fact finder on the indemnity issue, found Pioneer had breached both its express warranty that the truck was roadworthy and an implied warranty of fitness for a particular purpose. *See Stuck*, 279 S.C. at 25, 301 S.E. (2d) at 554 (citing sections 36-2-313, 36-2-316, Code of Laws of South Carolina, 1976). The court also found Pioneer liable in tort of the theory of strict liability. *See id.* (citing section 15-73-10, Code of Laws of South Carolina, 1976, as amended). It further found the defects in the truck caused the accident. Significantly, in view of the jury's prior verdict of negligence against Stuck, the court did not hold that Pioneer's wrongdoing was the sole cause of the accident. The court simply ignored Stuck's negligence, giving two reasons for doing so.

First, the judge claimed Pioneer had offered no evidence of Stuck's negligence other than the transcript of the Hastings trial, which he ruled not admissible.[1] As a matter of law, however, Pioneer did not have to prove Stuck's negligence, because it was an adjudicated fact of record in the same proceeding before the same court. It is elementary law that a court of record can take judicial notice of its own judgments. *Freeman v. McBee*, 280 S.C. 490, 494, 313 S.E. (2d) 325, 327 (Ct. App. 1984). Judicial notice takes the place of proof. *Masters v. Rodgers Development Group, Inc.*, 283 S.C. 251, 255, 321 S.E. (2d) 194, 195 (Ct. App. 1984). The final, unappealed

---

[1] This ruling is not supported by appellate court decisions from this state. Furthermore, we believe the rule to be that judicial records are admissible in evidence. *See, e.g., Glover v. Huddleston*, 39 Ala. App. 261, 105 So. (2d) 148 (1957).

judgment was a conclusive adjudication of Stuck's negligence and a matter of record in the action on the counterclaim. Its validity was not affected by the parties' subsequent decision not to pursue an appeal. *Evans v. Creech* 187 S.C. 371, 379, 197 S.E. 365, 368 (1938).

The judge also refused to consider Stuck's negligence for a second reason. He held that because Stuck's pleadings did not allege Pioneer's negligence, but rested on breach of warranty and strict liability, Stuck was not a joint tortfeasor. As we have already emphasized above, the facts at trial, not the allegations of a party's pleading, control liability. Moreover, Stuck *did* allege a tort against Pioneer, the tort of furnishing a defective product which is inherently dangerous. Since the injury to Hastings was caused by the concurrent torts of both Stuck and Pioneer, they were joint tortfeasors under the accepted legal definition of that term.[2]

The Supreme Court, affirming, stated:

> The uncontroverted testimony shows that the equipment was defective and the defective equipment caused the accident. Clearly, the claim for damages arose out of appellant's breach of warranties and its strict liability for selling a dangerously defective product.

*Id.* 279 S.C. at 26, 301 S.E. (2d) at 554. The Supreme Court, like the trial judge, refused to consider Stuck's own negligence, which the jury necessarily found was a concurrent, contributing and proximate cause of the accident. Because Stuck had been adjudicated a tortfeasor in the same case before the same court, he had no right to indemnity under the

---

[2] *See, e.g., Hollifield v. Keller,* 238 S.C. 584, 589-90, 121 S.E. (2d) 213, 215 (1961): "That a single injury, which is the proximate result of the separate and independent acts of negligence of two or more parties, subjects the tort-feasors, even in the absence of community of design or concert of action, to liability which is both joint and several, is a proposition recognized and approved in this state and supported by the great weight of authority elsewhere." That Stuck and Pioneer were guilty of independent tortious acts against Hastings was immaterial. *Id.; see also O'Neal v. Carolina Farm Supply, Inc.,* 279 S.C. 490, 495, 309 S.E. (2d) 776, 780 (1983) (One party allegedly negligent in furnishing toxic feed, other party allegedly negligent in feeding it to pigs who died. HELD: court correctly charged jury that acts of two or more persons may operate concurrently as an efficient cause of an injury and in such cases each of the contributing acts is regarded as proximate cause for which each of the participants may be held liable).

law as laid down in *Addy* and *Atlantic Coast Line R.R. Co. v. Whetstone*, 243 S.C. 61, 132 S.E. (2d) 172 (1963).[3] Instead, the joint tortfeasor rule should have applied to bar equitable indemnity.

The facts of this case are dramatically different. The trial of the Home Seller's Cross Claim for indemnity against the Exterminator established that the Exterminator was guilty of fraud, while the Home Seller, unlike Stuck, was totally innocent of wrongdoing. It was this freedom from any fault that created the equity in Home Seller's favor and entitled him to equitable indemnity. *See Addy v. Bolton, supra; Town of Winnsboro v. Wiedeman-Singleton, Inc., supra*. For this same reason, the joint tortfeasor rule applied in *JKT Company, Inc. v. Hardwick, supra*, did not apply to this case.

### III.

The argument of counsel that the Home Seller was a mere volunteer is without merit. The Exterminator's wrongdoing made it necessary for her to protect her interests against a third party. The Home Seller "bought her peace" because of a predicament in which she found herself as a result of the fraudulent representations of the Exterminator. She did not volunteer; she chose the lesser of two evils, the worser of which was to go to trial, risking a verdict against her of more than $5,000, plus payment of additional attorney's fees and costs. The amount paid for her "peace" was reasonable. The award of the trial judge was minimal considering the costs and attorney fees allowed in *Addy v. Bolton*.

For the reasons given, we affirm the judgment of the circuit court awarding Van Norman her settlement costs as an equitable indemnity.

Affirmed.

SANDERS, C.J., and GARDNER, SHAW and BELL, JJ., concur.

CURETON and GOOLSBY, JJ., dissent in separate opinions.

---

[3] Ironically, both the trial court and the Supreme Court acknowledged that Stuck would have no right to indemnity if his fault contributed to the accident. *Stuck*, 279 S.C. at 24-25, 301 S.E. (2d) at 553-54. They simply chose to read Stuck's negligence clean out of the record.

CURETON, Justice, dissenting:

I would remand the case for the following reasons. A cause of action for equitable indemnification is necessarily equitable in nature and our scope of review permits us to find facts in accordance with our view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

The majority sets forth in Part I of their opinion the criteria for determining whether a settlement qualifies for equitable indemnification. Of course, the trial judge did not address these criteria. Without indicating any agreement with these criteria, I would find there is insufficient evidence in the record to determine either that the decision to settle or the amount of the settlement was reasonable.

I note there is an exhibit that purports to set forth the Griffins' damages and the Griffins' answer to Gregory's interrogatories also sets out damages. I cannot, however, reconcile these exhibits. Indeed, much of the damages set forth on these documents could not have been caused by the conduct of Gregory. The Griffins state in their answer to Gregory's interrogatories that they sustained damages to their home of $5,298, plus damages for fraud, misrepresentation, and punitive damages. A close examination of the $5,298 figure indicates this expense was to replace flooring and sills. Surely, Gregory's conduct did not cause the sills and floor to rot. Likewise, examination of the exhibit suggests a portion of the estimate does not relate to the termite and moisture damage. Because the Griffins claimed actual damages exceeding the $16,000 paid by the Van Normans and Gregory it can be reasonably inferred that a portion of the monies paid was for the repair of the infrastructure of the house and for correcting the moisture problem. Some of these expenses would have been incurred by the Van Normans in any event. Gregory failed to discover this damage and/or misrepresented its existence. He did not create it.

I differ with the trial judge that the preponderance of the evidence supports his finding that the loss suffered by the Griffins was occasioned solely by the conduct of Gregory. In any event, I would remand this case to the trial court for a determination of the reasonableness of the settlement.

GOOLSBY, Justice, dissenting:

I respectfully dissent.

The respondent Linda B. Van Norman's cross-claim against the appellant Mack Gregory doing business as Mack Gregory Pest Eliminators arises out of an action for fraud brought by the plaintiffs Robert Griffin and Teri B. Griffin against Van Norman and Gregory. The Griffins' complaint does not allege that Van Norman was vicariously liable for Gregory's conduct; rather, it alleges that "both" Van Norman and Gregory made false representations about the condition of a house sold the Griffins by Van Norman and that both failed to disclose, as was their duty to do, that the house had been damaged extensively by moisture and termite damage. In her answer, Van Norman alleges as a second defense, which also embraced her cross-claim, "[t]hat any damage suffered by the [Griffins] in this matter [was] due to the negligence or misrepresentation of [Gregory]." Van Norman, however, later paid the Griffins $5,000 to settle their claim against her. Following a bench trial thereafter held upon Van Norman's cross-claim, the trial court, relying upon *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E. (2d) 552 (1983), found Van Norman entitled to indemnification from Gregory for the amount that she paid the Griffins in settlement of their claim against her. I would reverse.

The Griffins' complaint required Van Norman to defend against allegations of fraud on her own part. It did not require her to defend against allegations of fraud on Gregory's part for which Van Norman was allegedly secondarily liable. *See Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971) (allowing indemnity to a landlord called upon in an action brought by tenants to defend against the wrongful acts of a general contractor hired by the landlord to make needed repairs to the building); 42 C.J.S. *Indemnity* § 29 at 610 (1944) ("[W]here two wrongdoers are made parties defendant and they are not in pari delicto, the one secondarily liable may have a judgment over against the other without being forced to a separate action. . . ."). Thus, had the Griffins' action been tried rather than settled and had it resulted in a verdict in favor of Van Norman, Van Norman would not have defended against conduct imputed to her as a result of fraud committed

by Gregory but would have defended against her *own* conduct and, under her second defense, would have used Gregory's fraudulent conduct as a defense.[1] Under those circumstances, she would not have been indemnified for the expenses she incurred in successfully defending the action. *Lightner v. Duke Power Company*, 719 F. Supp. 1310 (D.S.C. 1989). That she settled with the Griffins, then, should make no difference.

I recognize that this court in *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, Op. No. 1552 (S.C. App., October 8, 1990), overruled the case that the court in *Lightner* relied upon, *JKT Company, Inc. v. Hardwick*, 284 S.C. 10, 325 S.E. (2d) 329 (Ct. App. 1984); however, I did not concur in the majority's action, believing as I do that this court correctly decided *JKT* and that the majority in *Town of Winnsboro* misconstrued *JKT* when they reached out to overrule it. *See Town of Winnsboro v. Wiedeman-Singleton, Inc.*, Op. No. 1552 (S.C. App., October 8, 1990) (Goolsby, J., concurring and dissenting).

---

[1] The record reflects that Van Norman clearly understood that, had she not settled and gone to trial, she would have had to defend her own, and not Gregory's, conduct in the sale of the house.

Moreover, it is not surprising that Van Norman settled or, as the majority puts it, "bought peace."

After Gregory discovered the termite and moisture damage and gave Van Norman a wood infestation report, Van Norman retained a local contractor, Handy Man Repairs, to repair the damage found by Gregory. When Handy Man finished making the repairs, Van Norman's husband crawled underneath the house and inspected Handy Man's work. Twenty-three days after Van Norman sold the house to the Griffins and supplied them with only a second wood infestation report given her by Gregory, the Griffins discovered that the house had widespread termite and moisture damage, including "[e]xtensive termite damage . . . on the hardwood floor in the bedroom in the right rear corner of the house."

There is no evidence that Van Norman disclosed to the Griffins that the house had ever been damaged by moisture and termites and that repairs had been made, a material fact that any sensible home buyer would want to know. She did not provide the Griffins, so far as the record reveals, with the first wood infestation report that indicated, among other things, that the damage observed by Gregory would be "corrected by another company."

Also, the second wood infestation report, which she did provide and is in the record, has a check list with the following entries checked "no": "(2) There is visible evidence of a previous infestation of: (A) Termites [and] (B) Other wood-destroying insects" and "(3) There is visible evidence of prior treatment." Arguably, the repairs made by Handy Man with Van Norman's knowledge would themselves constitute "visible evidence" of a previous infestation and of prior treatment.

Indeed, the majority continues to misread *JKT*. They now say that *JKT* "held that the right to indemnity was to be determined on the face of the pleading, rather than by facts in evidence at trial." *JKT* contains no such holding. The court's discussion in *JKT* of the *Addy* case makes it clear that the court understood that the "evidence in the record," and not simply the allegations set forth in the pleadings, must also be considered. *JKT Company, Inc. v. Hardwick*, 284 S.C. at 14-15, 325 S.E. (2d) at 332.

In any case, *Addy* and *Town of Winnsboro*, relied upon by the majority, and *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E. (2d) 552 (1983), relied upon by the trial court, do not support what the majority does here.

I also dissent because Van Norman voluntarily paid the Griffins $5,000 in settlement of the Griffins' claim against her, even though, as the court later found, there was no basis for liability on her part. *See* 41 Am. Jur. (2d) *Indemnity* § 33 at 723 (1968) ("Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays."); 42 C.J.S. *Indemnity* § 14c(2) at 590 (1944) ("[A] contract of indemnity does not protect the indemnitee against loss through a payment which is entirely voluntary on his part, in the sense that there is no legal obligation on him to make it, unless such payment is made with the knowledge and approval of the indemnitor."); *cf. Vause v. Mikell*, 290 S.C. 65, 69, 348 S.E. (2d) 187, 190 (Ct. App. 1986) ("A remainderman is not entitled to reimbursement for property taxes paid as a volunteer.") Van Norman was not faced, as the majority suggests, with an obligation that she could not legally resist or, as some would say, "an offer she couldn't refuse." *See* 41 Am. Jur. (2d), *supra* ("The fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obligated to wait to be sued and to lose a reasonable opportunity for compromise.").