OPINION
PER CURIAM:
Brendle’s Stores, Inc. and Brendle’s Incorporated (hereinafter jointly called “Brendle’s”) appeal from the district court’s orders granting summary judgment for all defendants, including the third party defendants, and awarding damages to defendants OTR[1] and TG & Y Stores Compa *153 ny (“TG & Y”), and attorneys’ fees to OTR. We find that the district court correctly decided all issues with the exception of the award of attorneys’ fees. Accordingly, we affirm on all issues except the award of attorneys’ fees.
In 1980, OTR entered into an arrangement with TG & Y whereby TG & Y would acquire store sites, arrange construction of stores, and then sell the stores to OTR for the cost of acquiring and building the facilities. OTR would then lease the stores back to TG & Y. Each lease provided that the tenant was responsible for paying all property expenses and stated that the lease generally would not terminate regardless of the condition of the premises. TG & Y could assign the lease without notice to OTR. One of the stores covered by this arrangement was located in Greenwood, South Carolina. TG & Y arranged for Nal-ley Construction Company (“Nalley”) and its sister company, Easley Lumber Company (“Easley”), to build the store. After OTR leased this store to TG & Y, Nalley enlarged the shopping center and added stores adjoining the eastern wall (“east wall” or “party wall”) of OTR’s store. Nalley and OTR entered a Party Wall Agreement in 1982 which defined each party’s ownership rights and future obligations concerning the east wall.
In 1986 TG & Y closed the Greenwood store and assigned all rights and obligations under the lease to Brendle’s. In addition to the lease, assignment, Brendle’s and TG & Y entered into a Consideration Agreement under which Brendle’s agreed to make yearly payments to TG & Y above the rent payments due to OTR.
Although no one had previously observed any problems with the east wall, in December 1988 employees of Brendle’s noticed that pieces of cinder block were falling from the top of the wall. Brendle’s immediately notified OTR verbally and in writing. An engineer retained by Brendle’s found evidence of joist bearing failure and crumbling cinder blocks along the top of the wall at points where the roof joists were supported. Then on December 23, 1988, Brendle’s notified OTR that unless OTR repaired the wall, it would vacate the store on January 10, 1989. Nalley began repair work on January 10, 1989, which it completed on January 16, 1989. However, Brendle’s had vacated the premises on January 10, 1989. Brendle’s stopped making rental payments after January 1989 and had stopped making the supplementary payments to TG & Y under the Consideration Agreement in 1988;
On January 31, 1989, Brendle’s sued OTR and TG & Y to recover damages allegedly incurred due to the structurally defective wall. TG & Y and OTR counterclaimed against Brendle’s and filed third party complaints against Nalley and Eas-ley. In addition, OTR cross claimed against TG & Y.[2] Brendle’s then brought third party claims against Nalley and Eas-ley. OTR, TG & Y, Nalley, and Easley all moved for summary judgment on the claims Brendle’s asserted against them. The district court granted the motions and then held a jury trial to determine the amounts Brendle's owed to OTR and TG & Y under the lease and Consideration Agreement. The court directed verdicts for both defendants, awarding OTR $272,497.13 and TG & Y $106,530.00. Pursuant to post-trial motions filed by OTR and TG & Y, the district court awarded OTR and TG & Y prejudgment interest and costs and awarded OTR attorneys’ fees. Following its unsuccessful motion for judgment notwithstanding the verdict, Brendle’s timely appealed.
A. OTR’s Lease Obligations
In the district court, Brendle’s alleged that OTR breached the lease by failing to repair the east wall. On appeal, Brendle’s asserts that the district court erroneously found, that Brendle’s was responsible for repairing the east wall. The central finding made by the district court, however, *154 was that OTR was under no express or implied obligation to repair the wall. Whether Brendle’s had a duty to repair the wall is irrelevant to the issue of OTR’s lease obligations. If OTR had no contractual duty to repair the wall, then Brendle’s has no claim, against OTR for breach of the lease.
As TG & Y’s assignee under the lease between OTR and TG & Y, Brendle’s acquired only those rights and obligations afforded to TG & Y under the lease. See W.M. Kirkland, Inc. v. Providence Washington Ins. Co., 264 S.C. 573, 216 S.E.2d 518, 521 (1975) (assignee has no higher rights than assignor and subrogee has no higher rights than subrogor). There are no express provisions in the lease obligating the lessor to repair the property. The only provisions concerning repairs address the lessee’s obligations.
Absent an express agreement, a landlord in South Carolina has no obligation to maintain commercial leased property in good repair because South Carolina law does not recognize an implied warranty of fitness or habitability in a commercial lease. Edwards, Inc. v. Arlen Realty & Dev. Cory., 466 F.Supp. 505, 509 (D.S.C. 1978). As the district court noted, the original lessee, TG & Y, actually handled the construction of the store and then conveyed it to OTR with a warranty that the building was built “in a good workmanlike manner and such improvements meet all existing applicable codes and ordinances.” Thus, no warranties from the landlord concerning the fitness of the building could be implied in this situation because the landlord would be guaranteeing the building’s fitness to the party responsible for constructing the building or that party’s assignee. Because OTR neither expressly nor implicitly agreed to maintain and repair the Greenwood store, it owed no such duty to Brendle's, and the district court properly granted OTR’s motion for summary judgment.
B. Effect of the Party Wall Agreement on the Lease
Brendle's complaint alleged that the Party Wall Agreement contained express warranties for the benefit of the building occupant and that OTR and Nalley breached those warranties due to the structural defects in the east wall. It also claimed that the Party Wall Agreement amended the lease, releasing the tenant or the tenant’s assignee from any obligations to maintain or repair the wall. Finally, Brendle’s argued that by executing the Party Wall Agreement, OTR was retaining control over the east wall and was obligated to maintain and repair it. The district court rejected all these arguments.
On appeal, Brendle’s claims that there is an issue of fact precluding summary judgment because neither TG & Y nor Brendle’s was a party to the Party Wall Agreement. Therefore, Brendle’s argues, the Agreement is in “derogation” of the lease between OTR and TG & Y and may have released the tenant from responsibility for maintaining the east wall. The fact that TG & Y and Brendle’s did not sign the Party Wall Agreement does not mean that the Agreement was in “derogation” of the lease. “Derogation” is defined as “[t]he partial repeal or abolishing of a law, as by a subsequent act which limits its scope or impairs its utility and force.” Blacks Law Dictionary 444 (6th ed. 1990). The Party Wall Agreement did not partially repeal or abolish the lease. Under paragraph two of the lease, the landlord gave the tenant exclusive control over the Greenwood store. When Nalley expanded the shopping center and converted the east wall into a party wall, TG & Y not only did not object, but actually drafted the Party Wall Agreement for OTR and Nalley. Thus, TG & Y waived its right to exclusive possession of the east wall. Because Brendle’s received only those rights to which TG & Y was entitled when the lease was assigned, Brendle’s never had the right to exclusive possession of the east wall. However, the fact that Brendle’s did not have exclusive possession of the wall did not affect its obligation to maintain the wall.
Through the Party Wall Agreement, OTR and Nalley, the wall’s owners, divided between themselves the responsibility for *155 maintaining and repairing the wall. The Agreement did not reduce the lessee’s obligations to OTR. Prior to the Party Wall Agreement, OTR could look to its lessee for maintenance of the east wall. After the Party Wall Agreement was executed, OTR still could look to its lessee for repair and maintenance, but also could require Nalley to contribute to repair and maintenance. Nalley’s promise to OTR did not reduce Brendle’s obligation because Bren-dle's was not a party to the agreement.
C. Constructive Eviction
Brendle’s contends that OTR’s failure to repair the east wall resulted in Brendle’s constructive eviction from the Greenwood store. Two elements are necessary to establish a cause of action for constructive eviction: (1) the tenant must be deprived of possession by the landlord’s intentional act or omission or that act or omission must interfere substantially with the tenant’s use or enjoyment of the leased property; and (2) the tenant must abandon the premises as a result of the landlord’s act or omission. Pleasantburg Warehouse Co. v. Global Distrib., Inc., 287 S.C. 422, 339 S.E.2d 135, 136 (Ct.App.1985) (citing Thomas v. Hancock, 271 S.C. 273, 246 S.E.2d 604 (1978)). As discussed above, OTR owed no duty to Brendle’s to repair the east wall. Therefore there was no act or omission by OTR which deprived Brendle’s of possession of the Greenwood store or substantially interfered with Brendle’s use or enjoyment of the store. Brendle’s abandonment of the premises was not caused by any act or omission by OTR. Because Brendle’s failed to establish the necessary elements for a constructive eviction, the district court properly granted OTR summary judgment.
D. Alleged Breach of Assignment Agreement
Paragraph four of the Assignment Agreement between TG & Y and Brendle’s provides that TG & Y “has performed all of [its] obligations” under the lease between OTR and TG & Y and would continue to perform those duties until the lease was assigned to Brendle’s. Brendle’s claims that it is entitled to indemnity from TG & Y for the wall repair payments it owes to OTR because the structural defects in the east wall existed before TG & Y assigned the lease to Brendle’s.
Under paragraph nine of the lease, the tenant was obligated to repair or rebuild the leased building “[i]f during the Lease term the demised premises shall be damaged or destroyed by fire, or by any other cause whatsoever.” Even if the problems with the east wall were attributable to defective construction or design, the actual wall damage did not occur until December 1988. TG & Y had assigned the lease to Brendle’s in 1986. Thus, the wall became damaged within the lease term after TG & Y had assigned all of its rights and responsibilities under the lease to Brendle’s, and TG & Y had no obligation to indemnify Brendle’s for any repair costs Brendle’s owed to OTR.
E. Brendle’s Breach of Consideration Agreement
Under the Consideration Agreement between Brendle’s and TG & Y, Brendle’s agreed to make yearly payments to TG & Y (above the rental payments owed to OTR) until 2022. Brendle’s was obligated to continue these payments unless the “Lease terminate[d] for any reason other than as a result of Brendle’s default.” After 1988, Brendle’s stopped making the annual payments to TG & Y. Because it concluded that the failure of the east wall did not relieve Brendle’s of its obligations under the lease, the district court held that Bren-dle’s was in default of payments owed to TG & Y under the Consideration Agreement.
Claiming that there is an issue of fact concerning whether the lease was terminated for a reason other than Brendle’s default, Brendle’s contends that the district court erred in granting summary judgment. ■ This argument is without merit. Paragraph five of the lease states that the tenant has no “right to terminate this lease or be entitled to the abatement of any rent or any reduction thereof, nor shall the obli *156 gations hereunder of Tenant be otherwise affected, by reason of any damage to or destruction of all or any part of the demised premises from whatever cause.” Thus, Brendle’s was not excused from its lease obligations due to the failure of the east wall. Because Brendle’s was not released from its lease commitments, it was obligated to continue payments to TG & Y under the Consideration Agreement. There was no issue of fact concerning whether Brendle’s breached the Consideration Agreement, and summary judgment in favor of TG & Y was appropriate.
F. Claims Against Nalley and Easley
1. Indemnification
The district court held that Brendle’s was liable to OTR and TG & Y for damages for breach of contract. Brendle’s argues that Nalley and Easley should indemnify it for these damages on the ground that as parties to the Party Wall Agreement, they were responsible for the east wall.
In South Carolina, “a right of indemnity exists ... where one person is exposed to liability by the wrongful act of another in which he did not join.” Stuck v. Pioneer Logging Mach., Inc., 279 S.C. 22, 301 S.E.2d 552, 553 (1983). Brendle’s was exposed to liability because it breached its obligations to OTR and TG & Y. Whether Nalley and Easley ultimately were responsible for the east wall failure is irrelevant. Brendle's contracts with TG & Y and derivative obligations to OTR required Brendle’s to perform its duties even if damage occurred to the leased building. The abandonment by Brendle’s of its contractual obligations constituted wrongdoing for which Nalley and Easley were not responsible, and the district court properly denied indemnification.[3]
2. Negligence Claims Against Nalley and Easley
Brendle’s also appeals the district court’s grant of summary judgment for Nalley and Easley on the issue of negligence. Brendle’s claims that Nalley and Easley negligently constructed the party wall and that Brendle’s sustained economic losses such as moving expenses and lost profits when it vacated the Greenwood store due to the defective wall. To establish a cause of action for negligence, a plaintiff must show three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) and injury proximately caused by the breach. Bullard v. Ehrhardt, 283 S.C. 557, 324 S.E.2d 61, 62 (1984).
South Carolina recognizes that contractors have a duty not to injure parties lawfully on the premises, including tenants leasing store space. See Addy v. Bolton, 257 S.C. 28, 183 S.E.2d 708, 709 (1971) (tenant recovered from contractor for damage to merchandise); Edward’s of Byrnes Downs v. Charleston Sheet Metal Co., 253 S.C. 537, 172 S.E.2d 120, 122-23 (1970) (tenant of one building entitled to recover from contractor of adjacent site for damage to merchandise). However, South Carolina has awarded damages to commercial tenants in such cases only for tangible losses such as property damage. Addy, 183 S.E.2d at 709; Edward’s, 172 S.E.2d at 122.
In 2000 Watermark Ass’n v. Celotex Corp., 784 F.2d 1183, 1187 (4th Cir.1986), this Court held that under South Carolina law, a negligence action cannot be maintained for economic losses. New home buyers are excluded from this rule and may recover economic losses from negligent builders. Kennedy v. Columbia *157 Lumber & Mfg. Co., 299 S.C. 335, 384 S.E.2d 730, 737 (1989). However, South Carolina courts have not carved out other exceptions to the economic loss rule. But cf. Kershaw County Bd. of Educ. v. United States Gypsum Co., 302 S.C. 390, 396 S.E.2d 369, 371 (1990) (economic loss rule does not preclude tort recovery if damage is not solely economic). We conclude that South Carolina law does not permit a commercial tenant to recover in tort from a builder for purely economic losses. Moreover, we note that any recovery for economic loss would be particularly inappropriate in this case as Nalley was prepared to perform prompt repairs in order to avoid any economic loss to Brendle’s. The district court did not err by granting Nalley and Easley summary judgment on Bren-dle’s negligence claim.
G. OTR’s Damages
1. Damages Awarded to OTR
The district court directed a verdict in favor of OTR for rent, exterminator bills, maintenance and repair costs, and insurance. Brendle's asserts that a directed verdict was improper because whether Bren-dle’s was responsible for such expenses under the lease is a question of fact for the jury-
A federal court exercising diversity jurisdiction applies federal law to determine whether there is sufficient evidence to submit a question to a jury. Owens v. Bourns, Inc., 766 F.2d 145, 149 (4th Cir.), cert. denied, 474 U.S. 1038, 106 S.Ct. 608, 88 L.Ed.2d 586 (1985). A directed verdict is appropriate where a district court, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, nevertheless finds no evidence supporting that party. Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir.1987).
When Brendle’s accepted assignment of the lease from TG & Y, it assumed all of TG & Y’s obligations under the lease. The lease required the tenant to return the Greenwood store to the lessor in the same condition it was delivered to the tenant. Because Brendle’s assumed TG & Y’s responsibilities, it was obligated to return the store to OTR in the same condition as when OTR delivered it to TG & Y. The lease did not require the tenant to repair ordinary wear and tear, but provided no other exceptions from maintaining the building.
OTR presented expert witnesses who testified as to the condition of the building. Brendle’s did not present expert evidence concerning the condition of the building (with the exception of the east wall). Instead, Brendle’s relied on the Greenwood store manager’s observations that he did not see any problems with the store. In light of the overwhelming expert evidence introduced by OTR in contrast to the non-expert observations of Brendle’s’ store manager, the district court did not err by directing a verdict in OTR’s favor.
2. Costs Not Awarded to OTR
OTR challenges the district court’s exclusion from the damage award of OTR’s repair costs for the east wall. If the Greenwood store was damaged during the lease period, Brendle’s was obligated by the lease to repair or rebuild it “on the same plans or designs as existed immediately before such damage or destruction occurred.” The east wall failed due to design defects. The repairs made by OTR were made to correct those defects and were not made on the same plans as the original wall. Accordingly, Brendle’s was not obligated to reimburse OTR for those expenses or for the architectural and engineering costs associated with the repair of the east wall.
OTR also claims that it was éntitled to recover costs associated with an appraisal of the property, a marketing study of the Greenwood area, and travel to inspect the premises. The witness through whom OTR attempted to introduce these expenses admitted that they were incurred primarily in preparation for the trial of this case. Given this testimony, the district court properly rejected OTR’s attempt to recover these costs as damages.
H. Mitigation
Under the lease, OTR was obligated to “use its best efforts to let or relet *158 the demised premises at a reasonable rental value.” Brendle’s contends that the district court erred in directing a verdict for OTR for damages because there was a factual question concerning OTR’s efforts to sell or relet the store.
In South Carolina, the burden of showing failure to mitigate falls on the party asserting the claim. Alala v. Peachtree Plantations, Inc., 292 S.C. 160, 355 S.E.2d 286, 290 (1987). OTR hired a realtor to sell or lease the store. The evidence adduced by Brendle’s that OTR listed the property at a price higher than its appraisal value fails to establish lack of mitigation. OTR’s duty was to try to relet the building — not to sell it. Furthermore, although OTR did not expedite repairs of the building, Brendle’s failed to present evidence showing that this inaction discouraged any prospective tenants or that extensive advertising would have resulted in a new tenant.
I. Attorneys’ Fees
The district court awarded OTR attorneys’ fees and expenses incurred in defending the lawsuit filed by Brendle’s. Absent a contract or statute providing otherwise, attorneys’ fees generally are not recoverable in South Carolina. Hegler v. Gulf Ins. Co., 270 S.C. 548, 243 S.E.2d 443, 444 (1978). The court based the award in this case on section (b) of paragraph ten of the lease which provides in part:
Tenant ... agrees to assume legal liability for, indemnify and hold free and harmless Landlord, ... from any and all loss, damages, liability, cost or expenses (including, but not limited to, attorneys’ fees, reasonable investigative and discovery costs and court costs) and all other sums which Landlord ... may reasonably pay or become obligated to pay on account of any, all, and every demand, claim, assertion of liability or action arising or alleged to have arisen out of any act or omission of Tenant ... made by any person, group or organization, whether employed by either of the parties hereto or otherwise.
In Tony Guiffre Distrib. Co. v. Washington Metro. Area Transit Auth., 740 F.2d 295, 298 (4th Cir.1984), this Court held that a similar indemnification clause allowed the award of attorneys’ fees only in suits brought by third parties against the indemnitee. The language of paragraph ten indicates that the parties did not envision it to cover lawsuits between them: the indemnity provision reaches suits brought against OTR by third parties arising out of acts of Brendle’s, not suits brought by Brendle’s. Because the lease does not provide for attorneys’ fees in the instant lawsuit, the district court erred in awarding OTR attorneys’ fees.

Conclusion

The district court properly granted summary judgment in favor of all defendants. It also was correct in awarding rent, maintenance, and repair costs to OTR, but excluding from damages the repair costs for the structurally defective east wall. Accordingly, we affirm the district court’s orders on these issues. However, we reverse the award of attorneys’ fees to OTR because the lease did not provide for attorneys’ fees for lawsuits between the lessor and lessee.
AFFIRMED IN PART AND REVERSED IN PART.

. OTR is an Ohio General Partnership acting on behalf of the Board of Trustees of the State Teachers Retirement System of Ohio.'

. OTR, TG & Y, and Brendle’s also asserted third party complaints against Joseph W. Hiller, the architect who prepared the plans for the Greenwood store. The district court granted summary judgment for Hiller and on appeal all parties stipulated to Hiller’s dismissal from the action.

. Brendle’s cites two recent South Carolina Court of Appeals decisions in support of its argument that it is entitled to indemnification from Nalley and Easley. In both Town of Winnsboro v. Wiedeman-Singleton, Inc., 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), and Griffin v. Van Norman, 302 S.C. 520, 397 S.E.2d 378 (Ct.App.1990), the indemnitor had a contractual relationship with the indemnitee which entitled the indemnitee to compensation. No such contractual relationship exists between Brendle’s and either Nalley or Easley. Without a contractual relationship, indemnification is awarded in South Carolina only if a special relationship exists between the indemnitor and indemnitee, such as master and servant. Town of Winns-boro, 398 S.E.2d at 503. Brendle’s has no special relationship with Nalley and Easley which would justify granting indemnification.