**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Caleb Snow and Mary Snow, as P.R. for the Estate of Chequita Snow Burgess, Deceased, Plaintiffs

v.

James Burgess, Michael Scott, and Heike Scott, Defendants,

Michael Scott and Heike Scott, Third-Party Plaintiffs, are the Appellants,

v.

Eugene Rhinehart, Third-Party Defendant, Respondent.

Appellate Case No. 2019-001032

———————

Appeal from Orangeburg County
Edgar W. Dickson, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-022
Heard April 7, 2022 – Filed January 18, 2023

———————

**REVERSED AND REMANDED**

———————

Damon Christian Wlodarczyk, of Riley Pope & Laney, LLC, of Columbia, for Appellants.

John Robert Murphy and Sarah Elizabeth Caiello, both of
Murphy & Grantland, PA, of Columbia, for Respondent.

---

**PER CURIAM:** In this wrongful death action, Appellants Michael Scott and Heike Scott (collectively, the Scotts) argue the circuit court erred in dismissing their third-party complaint seeking equitable indemnity from Respondent Eugene Rhinehart (Rhinehart). We reverse and remand.

In June 2018, the Estate of Chequita Snow Burgess (the Estate) filed suit against James Burgess and the Scotts. According to the complaint, James and Chequita were riding along Interstate 20 on James's motorcycle when they collided with a horse owned by Rhinehart, killing Chequita. The Estate claimed that the Scotts, who allowed Rhinehart to keep horses on the property, had, inter alia, "fail[ed] to maintain the fence in which the horse was located[]" and "fail[ed] to control the horse[.]" The pleading included an action for wrongful death and a survival action.

The Scotts responded with an answer and third-party complaint seeking equitable indemnity from Rhinehart. The Scotts argued that the horse belonged to Rhinehart, and their "property was properly fenced with locking gates and was appropriate to [corral] a horse."[1] Rhinehart moved to dismiss the third-party claims.[2] Rhinehart argued that he and the Scotts were joint tortfeasors and the Scotts did not have a "special relationship" with him; thus, indemnity was inappropriate.

On May 24, 2019, the circuit court granted the motion to dismiss on both grounds raised by Rhinehart. This appeal followed.

"A [circuit court] in the civil setting may dismiss a claim when the defendant demonstrates the plaintiff has failed 'to state facts sufficient to constitute a cause of action' in the pleadings filed with the court." *Williams v. Condon*, 347 S.C. 227, 232–33, 553 S.E.2d 496, 499 (Ct. App. 2001) (quoting Rule 12(b)(6), SCRCP). "The [circuit] court's ruling on a Rule 12(b)(6) motion must be bottomed and premised solely upon the allegations set forth by the plaintiff." *Id.* at 233, 553 S.E.2d

---

[1] James also filed cross-claims against the Scotts. This prompted another third-party complaint against Rhinehart.

[2] According to the circuit court's eventual ruling, Rhinehart agreed to a settlement with the Estate at some point.

at 499.  "Upon review, the appellate tribunal applies the same standard of review that was implemented by the [circuit] court." *Id.* at 233, 553 S.E.2d at 500.

We find our supreme court's decision in *Skydive Myrtle Beach, Inc. v. Horry County*, 426 S.C. 175, 826 S.E.2d 585 (2019), determinative in our consideration of this appeal.  In *Skydive*, the court emphasized the gravity of dismissing a case with prejudice.  *See id.* at 180–82, 826 S.E.2d at 587–88.  The court explained that after a motion to dismiss is granted, "any plaintiff is . . . entitled to accept the court's ruling the original complaint was deficient[] and replead in an attempt to fix the deficiency."  *Id.* at 181, 826 S.E.2d at 588.  However, because of certain timelines in our state's procedural rules,

> if any plaintiff . . . has no legitimate argument as to the merits of the Rule 12(b)(6) ruling, and therefore cannot file a Rule 59(e) motion, that plaintiff has no way of tolling the thirty[-]day deadline for filing an appeal while the motion to amend is litigated.  Similarly, a plaintiff who chooses to replead is practically prevented from doing so when the dismissal order is with prejudice because the time for appeal will not be tolled unless the plaintiff files a Rule 59(e) motion addressing the merits of the Rule 12(b)(6) ruling.

*Id.*  Therefore, the court found that, in the matter before it, "the circuit court erred *not only* in refusing to consider the request to amend, *but also* in effectively preventing [the plaintiff] from litigating a post-ruling motion to amend by immediately dismissing the claims 'with prejudice.'"  *Id.* at 182, 826 S.E.2d at 588 (emphases added).[3]

We must follow our supreme court's instructions in *Skydive* to make certain that claims are not hastily dismissed with prejudice, cutting off the plaintiff's opportunity to amend *following* an initial ruling dismissing the claim.[4]

---

[3] The Scotts did not specifically raise *Skydive* before the circuit court or this court.  However, the circuit court's hearing in this case was before *Skydive* was issued.  The circuit court's ruling came out two months after *Skydive*.  And the issues addressed in *Skydive* are not foreign to the grounds for the Scotts' appeal.

[4] The record suggests that the Scotts did amend their complaint in the circuit court, but this appears to have been prior to the dismissal.

We need not decide—and stress we are not yet deciding—whether the Scotts *have* demonstrated a special relationship between themselves and Rhinehart, or can do so. We simply hold the complaint should not have been dismissed with prejudice until the circuit court gave the Scotts an opportunity, after the granting of the motion to dismiss, to craft a complaint that stated a legally viable theory of the case.

For the sake of judicial economy, we will address the circuit court's finding that the Scotts' complaint could not survive the motion to dismiss because the Scotts and Rhinehart were joint tortfeasors. This was error.

> [A]fter demonstrating a sufficient relationship exists, a party seeking equitable indemnification . . . must prove: "(1) the indemnity defendant . . . is at fault in causing the damages of the third party . . . ; (2) *the [indemnity] plaintiff has no fault for those damages*; and (3) the [indemnity] plaintiff incurred expenses that were necessary to protect his interest in defending [against] the third party's claim."

*Fountain v. Fred's, Inc.*, 436 S.C. 40, 47–48, 871 S.E.2d 166, 170 (2022) (emphasis added) (quoting *Inglese v. Beal*, 403 S.C. 290, 299, 742 S.E.2d 687, 692 (Ct. App. 2013)).

This court considered arguments similar to Rhinehart's in *Jourdan v. Boggs/Vaughn Contracting, Inc*. There, the South Carolina Department of Transportation (SCDOT) sought dismissal of a claim for equitable indemnity against it in a personal injury suit. 324 S.C. 309, 311, 476 S.E.2d 708, 709 (Ct. App. 1996). The circuit court in that case granted the motion, in part because of its finding that SCDOT and the party seeking indemnification were joint tortfeasors.[5] *Id.* at 311–12, 476 S.E.2d at 709–10. This court reversed.

> Clearly the right to recover, while it exists, does not ripen until decided by the finder of fact. Consequently, dismissal on the basis of a Rule 12 motion was premature. "[T]he allegations of the [original c]omplaint . . . are not determinative of . . . the right to indemnity. Rather, such

---

[5] In addition, the circuit court in *Jourdan* ruled that the party seeking indemnification from the SCDOT "was not entitled to equitable indemnity as there was no pre-existing duty arising out of a pre-tort relationship." *Id.* at 312, 476 S.E.2d at 710.

> a determination is based on the evidence and the facts found by the fact finder."

*Id.* at 313–14, 476 S.E.2d at 711 (first, third, and fourth alterations in original) (quoting *Griffin v. Van Norman,* 302 S.C. 520, 524, 397 S.E.2d 378, 380 (Ct. App. 1990)).

As a legal matter, it is virtually impossible to decide at this point whether the Scotts are joint tortfeasors—or tortfeasors of any kind—before a fact finder determines whether they are at fault. *See First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 443, 445 S.E.2d 446, 448 (1994) (finding improper the dismissal of a third-party plaintiff's equitable indemnity action based on the original plaintiff's "mere allegations of [the third-party plaintiff's] negligence").

Rhinehart argues that if certain statutes "preclude all common law liability against [the Scotts]," as they contend, the Scotts could not seek indemnity. *See* S.C. Code Ann. §§ 47-7-110 (2017) (requiring "the owner or manager of any domestic animal" to contain the animal), 47-7-130 (2017) (concerning liability for actions of "trespassing stock"). His argument is built on the notion that because "the [c]ircuit [c]ourt could not find [the Scotts] liable for [the Estate's] injuries at all," then the Scotts were "not 'exposed to liability' by [Rhinehart's] acts." Here, Rhinehart quotes our supreme court's decision in *Rock Hill Telephone Co. v. Globe Communications, Inc.*, that "where one person is exposed to liability by the wrongful act of another in which he does not join," indemnity may be found. 363 S.C. 385, 389, 611 S.E.2d 235, 237 (2005) (quoting *Stuck v. Pioneer Logging Mach., Inc.*, 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983)).[6]

We find this unconvincing. First, we do not believe the *Rock Hill Telephone Co.* decision says that these are the only circumstances under which indemnity can be found. *See id.* ("The right to indemnity arises by operation of law 'in cases of imputed fault *or* where some special relationship exists between the first and second parties.'" (emphasis added) (quoting *First Gen. Servs. of Charleston, Inc.*, 314 S.C. at 442, 445 S.E.2d at 448)); *id.* ("[A] right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, *as where* one person is exposed to liability by the wrongful act of another in which he does not join." (emphasis added) (footnote

---

[6] Rhinehart makes what appears to be a different variation on this argument: that if the Scotts are not subject to the relevant provisions of state law, they cannot be held liable under them and, thus, cannot seek indemnity. We believe that argument runs counter to the very idea of equitable indemnity.

omitted) (quoting *Stuck*, 279 S.C. at 24, 301 S.E.2d at 553)). Second, we do not believe that the quoted language was meant to indicate that the *reason* for a favorable outcome determines whether a party may seek indemnity. *See Griffin*, 302 S.C. at 524, 397 S.E.2d at 380 ("Where, as here, the person seeking indemnity was exonerated at trial from all liability, indemnity is allowed."); *id.* at 527, 397 S.E.2d at 382 ("It was this freedom from any fault that created the equity in [the party's] favor and entitled [it] to equitable indemnity."). Finally, even if we were to assume that a dismissal is somehow different than a verdict, that issue could not be decided until *after*, for example, the complaint against the Scotts was dismissed.[7]

---

[7] Rhinehart also argues that the third-party claim constitutes an improper use of Rule 14. *See* Rule 14(a), SCRCP ("At any time after commencement of the action[,] a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."); *see also First Gen. Servs. of Charleston, Inc.*, 314 S.C. at 442, 445 S.E.2d at 447 ("Under Rule 14, the third-party plaintiff must have a substantive claim against the third-party defendant founded upon derivative liability. The outcome of the principal claim must impact the third-party defendant's liability; however, no right exists to implead a third-party defendant who is *directly* liable to the plaintiff."). As the record does not indicate that this was raised before the circuit court, we are not obligated to address it. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds." (footnote omitted)); *id.* at 421, 526 S.E.2d at 724 ("[T]he respondent may raise an additional sustaining ground that was not even presented to the lower court, but the appellate court is *likely* to ignore it." (emphasis added)). In any case, holding that Rule 14 means that parties seeking indemnity "cannot recover their attorney's fees," as Rhinehart contends, because the Scotts' "costs and fees are not derivative or secondary damages" would considerably weaken equitable indemnity. Additionally, we note that one of the authorities Rhinehart cites for this proposition explicitly mentions indemnity as a proper use of impleader. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1446 (3d ed. April 2022 update) ("A third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim *or when the third party is secondarily liable to the defending party*. The secondary or derivative liability notion is central and thus impleader *has been successfully utilized when the basis of the third-party claim is indemnity*, subrogation, contribution, express or implied warranty, or some other theory." (emphases added) (footnotes omitted)).

On remand, the circuit court should grant the Scotts leave to amend their pleading to clarify the theory of a special relationship under which they will proceed and to conform their prayer for relief to our state's case law on indemnity. At that point, of course, any party may make any motion that it believes is warranted, and the circuit court may consider any such motion.

**REVERSED AND REMANDED.**

**GEATHERS and HILL, JJ., and LOCKEMY, A.J., concur.**