697 S.E.2d 531

**Eric U. FOWLER and Melissa W. (Dawn) Fowler, Respondents,**

v.

**Sallie HUNTER, Gynecologic Oncology Associates, Selective Insurance Company of South Carolina and Insurance Associates, Inc., Defendants,**

of whom Selective Insurance Company
of South Carolina is, Respondent,

and Insurance Associates, Inc., is, Petitioner.

No. 26834.

Supreme Court of South Carolina.

Heard May 25, 2010.

Decided July 19, 2010.

Rehearing Denied Aug. 19, 2010.

F. Matlock Elliott and Joshua L. Howard, of Haynsworth Sinkler Boyd, of Greenville, for Petitioner.

Andrew F. Lindemann, of Davidson & Lindemann, of Columbia; Rodney M. Brown, of Younts Alford Brown & Goodson, of Fountain Inn, for Respondents.

Chief Justice TOAL.

This Court granted a writ of certiorari to review the court of appeal's reversal of the trial court's grant of summary judgment to Insurance Associates, Inc. (Insurance Associates), an insurance agency.

### FACTS/PROCEDURAL BACKGROUND

Respondents Eric and Melissa Fowler (the Fowlers) were severely injured when a vehicle driven by Sallie Hunter (Hunter) collided with their motorcycle. Among the physical harm suffered by the Fowlers was a permanent brain injury to Melissa Fowler. The car driven by Hunter was owned by Hunter's husband's medical practice, Gynecological Oncology Associates (GOA). The Fowlers filed a negligence action against Hunter and GOA.

Three insurance policies were initially thought to provide coverage for the accident. First, GOA had a business automobile insurance policy with a limit of one million dollars issued by Auto–Owners Insurance that insured the car driven by Hunter. Hunter and her husband also had a personal catastrophic liability policy with a limit of two million dollars, which was issued by Selective Insurance Company (Selective). There are no coverage questions with respect to these two policies.

However, GOA also had a commercial liability policy with a limit of four million dollars issued by Selective, but procured by Insurance Associates. GOA intended that this policy provide automobile coverage, however Selective contended that the commercial liability policy did not provide automobile coverage. In reaction to Selective's contention, the Fowlers

filed the instant declaratory judgment action against Hunter, GOA, Selective, and Insurance Associates to determine the amount of available insurance coverage under the commercial liability policy.

Hunter and GOA answered and filed cross-claims against Selective for breach of contract, bad faith, and reformation. Hunter and GOA also asserted a cause of action against Insurance Associates for professional negligence, in which Hunter and GOA alleged Insurance Associates, as the agent for Selective, failed to properly issue the policy with automobile coverage as requested by GOA. They also alleged Selective was liable for the acts and omissions of Insurance Associates because Insurance Associates was acting as the agent for Selective. Selective then filed a cross-claim against Insurance Associates for equitable indemnification.

At GOA's request, Insurance Associates procured the commercial liability policy through Selective's "One and Done" software program. Hunter and GOA alleged Insurance Associates representative, Roy Phillips (Phillips), simply failed to check the appropriate box within the "One and Done" program, which would have provided GOA with the requested automobile coverage under the commercial liability policy. In his deposition, Phillips testified that GOA requested automobile coverage under the policy, but that he inadvertently failed to check the correct box. According to Phillips, there would not have been any additional cost added to the premium had he included automobile coverage as requested. Finally, Phillips testified that Insurance Associates had the authority to issue the policy and bind Selective.

Eventually, all of the parties except for Insurance Associates agreed to settle the motorcycle suit and entered into a global settlement agreement. As part of this agreement, Auto–Owners Insurance agreed to tender to the Fowlers the limits on the Hunter's one million dollar automobile policy. Also, Selective agreed to tender the policy limits on the two million dollar personal catastrophic liability policy. Furthermore, Selective agreed to pay the Fowlers an additional one and a half million dollars within thirty days of the filing date of an order approving the settlement, which was required because of Melissa Fowler's brain injury.

Notably, the Fowlers signed a covenant not to execute against the Hunters [1] and GOA. The Hunters and GOA also assigned to the Fowlers their professional negligence claim against Insurance Associates. Selective and the Fowlers agreed to cooperate in the pursuit of the professional negligence and equitable indemnification actions. Furthermore, they agreed to equally split the costs and potential proceeds realized from these causes of action.

After the trial court approved the settlement, Insurance Associates moved for summary judgment as to the causes of action for professional negligence and equitable indemnity. The trial court granted these motions.

With respect to the professional negligence claim, the trial court found the covenant not to execute entered into by the parties relieved Hunter and GOA from further liability from any and all claims arising from the motorcycle accident. Therefore, the trial court found that the Fowlers, standing in the shoes of Hunter and GOA, could never prove damages with respect to Insurance Associates' alleged failure to procure automobile insurance coverage under the four million dollar commercial liability policy. Thus, the trial court granted the motion for summary judgment.

The trial court granted summary judgment as to Selective's cause of action for equitable indemnification finding that Selective was not harmed by Insurance Associate's alleged negligence. The trial court noted Insurance Associates' argument that Selective was actually benefitted by Insurance Associates' failure to procure the desired automobile coverage. Specifically, Insurance Associates argued that had it prepared the policy as requested, Selective would have been unquestionably liable for four million dollars, the total amount of the policy. However, Insurance Associates argued that Selective was able to settle the claim for only one and a half million dollars because of the uncertainties involved. The trial court agreed and concluded it was impossible to determine whether Selective was harmed by Insurance Associates' mistake. Therefore, the trial court ruled there could be no finding of harm

---

1. Dr. Hunter was a party to the settlement despite the fact that he was not named as a defendant in the lawsuit.

and granted summary judgment as to the equitable indemnification claim.

The court of appeals reversed. Insurance Associates filed a petition for a writ of certiorari, which this Court granted.

## ISSUES

Insurance Associates presents the following issues for review:

I.  Did the court of appeals err in reversing the trial court's grant of summary judgment as to the claim for professional negligence?

II.  Did the court of appeals err in reversing the trial court's grant of summary judgment as to the claim for equitable indemnification?

## STANDARD OF REVIEW

When reviewing a grant of summary judgment, an appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Id.;* Rule 56(c), SCRCP. When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Id.*

## LAW/ANALYSIS

### I.  Professional Negligence

Insurance Associates argues that the court of appeals erred in reversing summary judgment as to the Fowlers' claim for professional negligence. We disagree.

To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach of duty. *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710 (2000).

■ Insurance Associates argues the court of appeals erred in following other jurisdictions that allow the prosecution of assigned claims such as this because the court of appeals' reasoning disregards the essential element of damages from the tort of negligence. The court of appeals held the trial court's analysis concerning the Fowler's inability to prove damages was technically correct, but was persuaded by the foreign jurisdictions that have addressed the issue and elected to allow such assigned claims to proceed.

Examining several decisions from foreign jurisdictions, the court of appeals found that a majority of other courts have approved similar settlement agreements, provided the risk of collusion is minimized. Citing *Bartholomew v. McCartha*, 255 S.C. 489, 179 S.E.2d 912 (1971), the court of appeals held South Carolina has expressed a willingness to depart from the technicalities of the common law in order to promote reasonable settlements in civil suits. The court further held South Carolina law required the careful scrutiny of settlement agreements to avoid the potential for complicity or wrongdoing.

We agree with the court of appeals' reliance on the Supreme Judicial Court of Massachusetts's holding in *Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658 (1996), in which that court found the existence of conflicting approaches to this issue throughout the country reflects a balancing of policy considerations. The Massachusetts court held the primary concern in many cases with the same procedural posture as the instant matter is the risk of collusion when an insured is protected from liability by an agreement not to execute prior to the entry of judgment in the underlying tort action. *Id.* We agree with this holding.

Insurance Associates argues that the parties' settlement in this case was collusive. We disagree. The court of appeals addressed this issue and correctly held there was no evidence of collusion between the parties. For instance, the parties did not stipulate as to the Fowlers' damages in the settlement agreement to reduce the appearance of collusion and the settling parties believed the motorcycle suit would be tried to a conclusion. Additionally, the settlement enabled the Fowlers to obtain the three million dollars available under the two

policies in which coverage was not disputed, while litigation against Insurance Associates was not foreclosed.

Because the court of appeals correctly recognized that South Carolina courts favor settlement and determined that there was no collusion involved in the settlement, it reversed the trial court's order granting summary judgment as to the assigned professional negligence claim. The court of appeals' reasoning is sound and we affirm its holding with respect to this issue.

## II. Equitable Indemnification

■ Insurance Associates argues the court of appeals erred in reversing the trial court's grant of summary judgment as to Selective's claim for equitable indemnification. We disagree.

■■ A plaintiff may maintain an equitable indemnification action if he was compelled to pay damages because of negligence imputed to him as the result of another's tortious act. *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Co.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999). A plaintiff asserting an equitable indemnification cause of action may recover damages if he proves: (1) the indemnitor was liable for causing the plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the plaintiff's claims against it, which were eventually proven to be the fault of the indemnitor. *Id.*

Insurance Associates argues the trial court's grant of summary judgment was appropriate because Selective cannot show it has been damaged by Insurance Associate's alleged negligence. Specifically, Insurance Associates asserts that Selective would have been liable for four million dollars had it procured the policy as requested. Thus, because Selective settled for one and a half million dollars, as opposed to the four million dollar liability limit, Insurance Associates argues Selective was benefitted by its negligence.

Insurance Associates' argument lacks merit because it is not clear from the record whether Selective would have issued the automobile coverage at issue, voluntarily exposing itself to liability. In support of its argument that Selective would have unquestionably issued the automobile coverage but for its

negligence, Insurance Associates points to a set of guidelines related to the "One and Done" software program. These guidelines, Insurance Associates argues, allowed agents to automatically secure policies if certain criteria were met. It claims these criteria were met.

Nonetheless, Selective claims that the required preconditions for the issuance of automobile coverage were not met and points to its own set of guidelines showing that coverage of the sort at issue here may not be automatically issued unless the underlying policy of automobile insurance was also issued by Selective. The underlying automobile policy in this case was not issued by Selective, but by Auto–Owners. Thus, Selective argues that it would not have issued the automobile coverage at issue exposing itself to four million dollars of liability, thus the one and a half million dollar paid in settlement are damages directly related to Insurance Associates' negligence.

The court of appeals found the competing sets of guidelines raised a genuine issue of material fact as to damages precluding summary judgment and reversed the trial court's grant. Insurance Associates' additional arguments in support of reversal, such as Selective's alleged failure to mitigate damages, misunderstand the reasoning of the court of appeals and are without merit. We agree with the narrow grounds upon which the court of appeals reversed the trial court's grant of summary judgment on the equitable indemnification claim and, thus, affirm its decision.

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals' reversal of the trial court's grant of summary judgment on the claims for professional negligence and equitable indemnification.

PLEICONES, BEATTY, JJ., and Acting Justices JAMES E. MOORE and JOHN H. WALLER, JR., concur.