709 S.E.2d 71

**WALTERBORO COMMUNITY HOSPITAL, Inc.**
**d/b/a Colleton Medical Center, Appellant**

v.

**David E. MEACHER, M.D., David E. Meacher, M.D., P.A., Carolina Health Specialists, P.A. a/k/a Care First Health Specialists, and The South Carolina Medical Malpractice Liability Joint Underwriting Association, Respondents.**

No. 4764.

Court of Appeals of South Carolina.

Heard Sept. 15, 2010.

Decided Dec. 15, 2010.

Withdrawn, Substituted and Refiled March 2, 2011.

Rehearing Denied May 26, 2011.

480

C. Mitchell Brown, Michael J. Anzelmo, Monteith P. Todd, and Weldon R. Johnson, all of Columbia, for Appellant.

Andrew F. Lindemann and Andrew G. Melling, both of Columbia; Hutson S. Davis, Jr. and Barry L. Johnson, both of Okatie; and James Edward Bradley, of West Columbia, for Respondents.

GEATHERS, J.

In this appeal of a declaratory judgment action, Walterboro Community Hospital, Inc., d/b/a Colleton Medical Center ("Colleton"), contends the circuit court erred in holding that Colleton was not entitled to equitable indemnification for costs it incurred in defending and settling a malpractice action brought by a third party. Colleton also argues that the circuit court erred in finding against Colleton on its breach of contract claim against Carolina Health Specialists, P.A., a/k/a CareFirst Health Specialists ("CareFirst"). We affirm.

## FACTS

This declaratory judgment action arises out of a medical malpractice action brought by Johnnie Grant against Colleton,

David E. Meacher, M.D. ("Dr. Meacher"), David E. Meacher, M.D., P.A. ("Meacher P.A."), and CareFirst (hereinafter referred to as "the Grant action"). On March 10, 2000, Grant arrived at the emergency department at Colleton, complaining of pain and swelling in his left testicle. Grant was examined and treated by Dr. Meacher, who, according to Grant's amended complaint, diagnosed Grant with epididymitis and released him. Dr. Meacher had been assigned to work at Colleton by CareFirst, which had entered into a professional services agreement with Colleton (the "Agreement") to provide physician staffing for Colleton's emergency department.

According to Grant, he continued to experience pain and swelling in his testicle after being discharged from Colleton. He thereafter sought treatment at the Medical University of South Carolina ("MUSC"), where he was diagnosed with testicular torsion. The MUSC physicians determined that Grant's testicle could not be repaired, and it was surgically removed.

Grant subsequently sued Colleton, Dr. Meacher, Meacher P.A., and CareFirst for medical malpractice. In his amended complaint, Grant contended that Dr. Meacher and Colleton deviated from the standard of care in failing to take appropriate diagnostic measures, in failing to request a urological consultation, in misdiagnosing his condition, in failing to rule out testicular torsion as a diagnosis, and in otherwise failing to diagnose and treat his condition properly. Additionally, Grant contended that Colleton, CareFirst, and Meacher P.A. were vicariously liable for Dr. Meacher's negligence. Colleton made demand on CareFirst to assume its defense pursuant to section four of the Agreement, but CareFirst refused. Specifically, section 4.1 of the Agreement required CareFirst to provide a defense to Colleton "for claims arising *solely* on the basis of vicarious liability or ostensible or apparent agency." (emphasis added).

Grant's case proceeded to trial. On the second day of trial, Grant reached a settlement with Colleton, Dr. Meacher, and Meacher P.A. for $100,000, with Colleton contributing $50,000 and Meacher contributing $50,000. The settlement agreement expressly denied any negligence or fault by any party. The settlement agreement further provided "this Release And

Agreement shall not be construed as an admission of liability by any or all of the Released Parties."

Following the settlement, Colleton asked for indemnification from Respondents. They refused, and Colleton subsequently brought this declaratory judgment action against them. In its complaint, Colleton alleged, among other things, that it was entitled to equitable indemnification from Respondents for its payment of $50,000 to settle Grant's medical malpractice claim. It further alleged that CareFirst breached section 4.1 of the Agreement by failing to assume Colleton's defense in the Grant action.

Prior to the hearing on Colleton's declaratory judgment action, the parties entered into a joint stipulation of facts. At the hearing, Colleton called only one witness: Weldon Johnson, the attorney who represented Colleton in the Grant action. The circuit court subsequently found that Colleton was not entitled to equitable indemnification and that it was not entitled to recovery under the Agreement. Colleton filed a motion to alter or amend judgment, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in holding that Colleton was not entitled to equitable indemnification?

2. In an imputed fault vicarious liability action setting, should there be a requirement on the part of the indemnitee to prove its own lack of fault?

3. Alternatively, in an imputed fault vicarious liability indemnity action setting, should proving fault on the part of the indemnitee be by way of an affirmative defense, with the burden for doing so being placed on the indemnitor?

4. Did the trial court err in denying relief on Colleton's breach of contract claim?

5. Does the nondelegable duty doctrine set forth in *Simmons v. Tuomey Regional Medical Center*, 341 S.C. 32,

53, 533 S.E.2d 312, 323 (2000), preclude recovery by Colleton? [1]

6. Is Colleton precluded from seeking equitable indemnification because its insurance company paid all of Colleton's settlement costs?

## STANDARD OF REVIEW

"A declaratory judgment action is neither legal nor equitable, and therefore, the standard of review is determined by the nature of the underlying issue." *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009). Equitable indemnity is an action in equity. *See Verenes v. Alvanos*, 387 S.C. 11, 18 n. 6, 690 S.E.2d 771, 774 n. 6 (2010) (noting a cause of action for equitable indemnity is necessarily equitable in nature); *Loyola Fed. Sav. Bank v. Thomasson Props.*, 318 S.C. 92, 93, 456 S.E.2d 423, 424 (Ct.App.1995) (same). "In an action in equity tried by a judge alone, the appellate court may find facts in accordance with its view of the preponderance of the evidence." *Goldman v. RBC, Inc.*, 369 S.C. 462, 465, 632 S.E.2d 850, 851 (2006). "However, this broad scope of review does not require the appellate court to disregard the findings made below." *Id.*

In contrast to equitable indemnification, "[a] breach of contract action is an action at law." *Madden v. Bent Palm Invs., LLC*, 386 S.C. 459, 464, 688 S.E.2d 597, 599 (Ct.App. 2010). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009). Therefore, the trial court's findings will not be disturbed unless they are found to be without evidence that reasonably supports those findings. *Id.* at 600, 675 S.E.2d at 415.

## LAW/ANALYSIS

### I. Did the circuit court err in holding that Colleton was not entitled to equitable indemnification?

Colleton contends the circuit court erred in holding that it was not entitled to equitable indemnification because the

---

1. Issues five and six listed in the Statement of Issues on Appeal are additional sustaining grounds raised by Respondents.

circuit court erroneously concluded that the settlement of the Grant action precluded Colleton from being indemnified by Meacher. After reviewing the language of the order, we believe Colleton misconstrues the circuit court's order.

The order sets forth the requirements for equitable indemnification set forth in *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999). Pursuant to *Vermeer*, a plaintiff asserting an equitable indemnification cause of action may recover damages if he proves: (1) the indemnitor was liable for causing the plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the plaintiff's claims against it, which were eventually proven to be the fault of the indemnitor. *Vermeer*, 336 S.C. at 63, 518 S.E.2d at 307. The order then states:

These requirements have not been met in the present case. [Colleton] settled the Grant lawsuit prior to the completion of trial. Thus, Dr. Meacher has not been legally adjudicated at fault, nor has [Colleton] been found without fault. Therefore, since there has been no finding of fault, [Colleton] is not entitled to equitable indemnification.

We believe the language of the order is ambiguous as to whether the circuit court based its decision on Colleton's failure to satisfy the *Vermeer* requirements or on the fact that the parties settled prior to the completion of trial.

We note that Rule 52(a) of the South Carolina Rules of Civil Procedure requires a trial court to make specific findings of fact so that the parties and the appellate court may determine the basis for the ruling. As our supreme court recently stated: "The [Rule 52] requirement for appropriately detailed findings is designed ... to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system." *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 320, 698 S.E.2d 773, 784 (2010) (internal citations and quotations omitted).

If this were an action at law, we would remand for further factual findings. *See In re Treatment and Care of Luckabaugh*, 351 S.C. 122, 134, 568 S.E.2d 338, 343–44 (2002) (remanding law case for failure to comply with Rule 52, SCRCP). However, in this equitable action we are free to

make findings of fact in accordance with our own view of the preponderance of the evidence. *Goldman,* 369 S.C. at 465, 632 S.E.2d at 851.

In reviewing the record, we look for evidence to support a finding that Meacher was at fault, while Colleton was not at fault. *See Vermeer,* 336 S.C. at 63, 518 S.E.2d at 307 ("Equitable indemnity cases involve a fact pattern in which the first party is at fault, but the second party is not."); *id.* ("If the second party is also at fault, he comes to court without equity and has no right to indemnity."); *id.* ("The most important requirement for the finding of equitable indemnity is that the party seeking to be indemnified is adjudged without fault and the indemnifying party is the one at fault.").

■ We believe the preponderance of the evidence supports the conclusion that Colleton failed to meet the *Vermeer* requirements. Importantly, at the declaratory judgment hearing, the only witness Colleton offered was Weldon Johnson, who acted as Colleton's attorney in the Grant action. No medical experts testified on Colleton's behalf at the hearing. Although Johnson rehashed some of the testimony provided by medical experts at the truncated Grant trial,[2] the transcript of the Grant trial is not in the record and it is therefore impossible to know whether Johnson provided a full picture of what occurred at that trial. We note that the Grant trial transcript was also not admitted as evidence during the indemnification hearing before the circuit court judge.

In addition, Colleton offered no expert testimony at the declaratory judgment hearing. *See Melton v. Medtronic, Inc.,* 389 S.C. 641, 653, 698 S.E.2d 886, 892 (2010) ("[E]xpert testimony is required in cases involving medical malpractice claims.").[3] We believe the record reflects that Colleton failed to meet the first and second elements of equitable indemnification. Specifically, Colleton did not conclusively establish that Dr. Meacher was liable for causing Colleton's damages. Fur-

---

2. Johnson's testimony arguably constituted hearsay, but we note Respondents did not object when Johnson provided this testimony.

3. Although the present case is not technically a medical malpractice case, in order to establish that Dr. Meacher was liable for Grant's damages (as mandated by *Vermeer*), Colleton was required to make a showing similar to that required in a medical malpractice case.

ther, Colleton failed to present any evidence that it was without fault. *See Fowler v. Hunter*, 388 S.C. 355, 363, 697 S.E.2d 531, 535 (2010) (stating in clear terms that the person "asserting an equitable indemnification cause of action" must prove the elements of indemnity, including that "the indemnitee was exonerated from any liability").

Colleton claims that the parties' stipulations were sufficient evidence for the trial court to find that Dr. Meacher was at fault and that Colleton was not at fault. In making this argument, Colleton cites the following stipulations: (1) "At the Grant trial, Dr. Mazo testified that Dr. Meacher's failure to order an ultrasound was a departure from [the] standard of care."; (2) "The only evidence introduced at the Grant trial by Plaintiff as to negligence or departure from [the] standard of care by either Defendant was limited to alleged departures by Dr. Meacher."; and (3) "At the Grant trial, Dr. Mazo testified that in his opinion, to a reasonable degree of medical certainty, the cause of the loss of a testicle by Grant was the misdiagnosis of testicular torsion by Meacher."

All of the above stipulations, however, merely discuss what occurred at the Grant trial—a trial that was terminated early because a settlement was reached. Moreover, Colleton, Dr. Meacher, and Meacher P.A. expressly denied any negligence or fault resulting from Grant's medical treatment as part of the settlement agreement. As noted above, the stipulations are not accompanied by a transcript of the Grant trial and thus provide an incomplete picture of that trial.

■ We believe these stipulations were akin to stipulations as to the law. Therefore, the circuit court was not required to accept these stipulations as conclusive proof that Dr. Meacher was liable for causing Grant's injuries, or as conclusive proof that Colleton was not liable. *See Greenville Cnty. Fair Ass'n v. Christenberry*, 198 S.C. 338, 345, 17 S.E.2d 857, 859 (1941) (holding that a "stipulation as to the law" is generally not binding upon the courts); *McDuffie v. McDuffie*, 308 S.C. 401, 409–10, 418 S.E.2d 331, 336 (Ct.App.1992) (holding that stipulations involving questions of law are not binding on the court).

■ We recognize that settlement alone does not preclude indemnification when there is sufficient evidence to support a

finding of fault on the part of the indemnitor and lack of fault by the indemnitee. However, we distinguish this case from the facts of *Otis Elevator, Inc. v. Hardin Construction Co.,* 316 S.C. 292, 450 S.E.2d 41 (1994), and *Griffin v. Van Norman,* 302 S.C. 520, 397 S.E.2d 378 (Ct.App.1990). In *Otis Elevator,* a subcontractor (Otis Elevator) settled with the plaintiff after a twelve-day trial and four hours of jury deliberation. *Id.* at 295, 450 S.E.2d at 43. Otis Elevator then brought a cause of action for contractual indemnification against the general contractor (Hardin Construction). *Id.* In the indemnification action, the jury returned with a verdict against Hardin Construction. *Id.* The jury also responded to a special interrogatory finding no act or omission on the part of Otis Elevator caused the plaintiff's injuries. *Id.* Thus, Otis Elevator was entitled to seek indemnity from Hardin Construction, because although Otis Elevator settled, there was a subsequent finding of lack of fault on Otis Elevator's part while Hardin Construction was subsequently found liable. *Id.* at 295–96, 450 S.E.2d at 43–44.

In *Griffin,* Van Norman (home seller) employed an exterminating company (exterminator) to provide a wood infestation report required by the Griffins (home buyers) before the sale of a house could be completed. *Griffin,* 302 S.C. at 521, 397 S.E.2d at 379. After the sale was consummated, the Griffins discovered the report was false. *Id.* The Griffins sued Van Norman and the exterminator. *Id.* at 521, 397 S.E.2d at 378–79. Both defendants settled with the Griffins, but the Van Norman's cross-claim for indemnification against the exterminator proceeded to a bench trial. *Id.* at 521, 397 S.E.2d at 379. The trial judge found that the loss suffered by the Griffins was occasioned "solely by the wrong of the [exterminator]" and that Van Norman had no knowledge that the report was false. *Id.* at 522, 397 S.E.2d at 379. Because the indemnity trial established that Van Norman was totally innocent of wrongdoing and that the exterminator was guilty of fraud, the trial court concluded Van Norman was entitled to indemnification by the exterminator. *Id.* This court affirmed the trial court's ruling on appeal. *Id.* at 527, 397 S.E.2d at 382.

Unlike *Griffin* and *Otis Elevator,* here the circuit court made no finding of fault on Dr. Meacher's part or lack of fault

on Colleton's part at the subsequent indemnification hearing. Reviewing the record, we conclude that there was insufficient evidence presented at the indemnification hearing to enable the circuit court to make any such findings of fault. Finally, even if the circuit court's order was ambiguous as to the exact basis for finding Colleton was not entitled to equitable indemnification, we can affirm for any reason appearing (or, in this case, failing to appear) in the record. *See* Rule 220(c), SCACR (noting "[t]he appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal"); *see also I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000).

There was insufficient evidence of fault on Dr. Meacher's part and lack of fault on Colleton's part presented at the medical malpractice trial prior to settlement, and insufficient evidence of fault/lack of fault at the subsequent indemnity hearing. Therefore, the *Vermeer* requirements were not met and the circuit court did not err in finding Colleton was not entitled to equitable indemnification.

## II. Did the circuit court err by denying relief to Colleton on its breach of contract claim against CareFirst?

Colleton argues that the circuit court misconstrued its breach of contract claim against CareFirst as a contractual indemnification claim and therefore the matter should be remanded to the circuit court for a determination of whether CareFirst breached the Agreement.

The portion of the Agreement at issue, section 4.1, states in pertinent part:

Contractor's [CareFirst's] insurance coverage shall provide Facility [Colleton] *defense* for claims arising *solely* on the basis of vicarious liability or ostensible or apparent agency, for the acts or inaction of Contractor and/or Contractor's Representatives.[4] .... In the event neither Contractor nor Contractor's Representatives purchase the required coverage, Facility, in addition to any other rights it may have

4. The term "Contractor's Representatives" is defined in the Agreement as "all of Contractor's [CareFirst's] employees, shareholders, partners, subcontractors, and agents providing services under this Agreement." Thus, the term would appear to include Dr. Meacher.

under the terms of this Agreement or under law, shall be entitled, but not obligated, to purchase such coverage. Facility shall be entitled to immediate reimbursement from Contractor or Contractor's Representative for the cost thereof.

(emphases added).[5]

In its complaint, as well as in its motion to amend, Colleton alleged that CareFirst "breached" section 4.1 by failing to obtain insurance coverage that provided Colleton a defense in the Grant action. However, in its pre-trial brief, Colleton did not specifically contend that CareFirst breached the Agreement. Rather, it claimed that it was entitled to "contractual indemnification" from CareFirst under the Agreement. Moreover, at the declaratory judgment hearing, Colleton's counsel referred to its contract claim as a "contractual indemnity" claim.[6]

In its order, the circuit court reviewed section 4.1 of the Agreement and found:

These provisions [of the Agreement] do not entitle either party to indemnification in the event of malpractice liability, but rather for the reimbursement for the costs of obtaining insurance. They merely provide the procedure of obtaining insurance and handling claims on the theory of ostensible or apparent agency, not for the indemnification for settlement of such claims, especially without a finding of fault.

---

5. Under section 4.1 of the Agreement, CareFirst was required to obtain insurance that would provide a *defense* to Colleton. Section 4.1 did not require CareFirst to obtain coverage that would *indemnify* Colleton. Therefore, even if CareFirst had breached section 4.1, it is questionable whether Colleton would be entitled to the $50,000 settlement amount as Colleton claims. *See Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 186, 236 S.E.2d 818, 820 (1977) ("The duty to defend is separate and distinct from the obligation to pay a judgment rendered against the insured.").

6. *Black's Law Dictionary* 837 (9th ed.2009), defines "contractual indemnity" as "[i]ndemnity that is expressly provided for in an agreement." *Black's Law Dictionary* further defines "indemnity clause" as "[a] contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." *Id.* at 837–38.

Thus, we acknowledge that the circuit court construed Colleton's claim as a contractual indemnification claim rather than a breach of contract claim. However, we believe remand is not required because there was no breach of contract.

Initially, we note this issue is questionably preserved because of the nebulous manner in which Colleton presented its contract issue to the circuit court. *See* Jean Hoefer Toal, et al., *Appellate Practice in South Carolina* 58 (2d ed. 2002) ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground."). However, in light of the fact that Colleton raised the breach of contract issue in both its complaint and its motion to amend, we proceed to address the issue on the merits.

As to the merits of Colleton's breach of contract claim, we do not believe CareFirst was required to provide Colleton a defense in the Grant action. The South Carolina Supreme Court has instructed that "[i]f the facts alleged in a complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund,* 382 S.C. 535, 544, 677 S.E.2d 574, 578 (2009). Therefore, "the allegations of the complaint determine the insurer's duty to defend." *Id.*

Although the situation here is slightly different than *Hartsville,* we believe CareFirst's duty to defend should be determined by reviewing Grant's complaint. In paragraph eighteen of his complaint, Grant alleged that Colleton, CareFirst, and Meacher P.A. were vicariously liable to Grant for Dr. Meacher's negligence. However, in paragraph sixteen of his complaint, Grant contended that *both* Dr. Meacher and Colleton deviated from the standard of care in failing to take appropriate diagnostic measures, in failing to request a urological consultation, in misdiagnosing his condition, in failing to rule out testicular torsion as a diagnosis, and in otherwise failing to diagnose and treat his condition properly. Thus, Grant's complaint alleges that Colleton was negligent in its own right. Accordingly, because the Agreement only required CareFirst to provide a defense to Colleton "for claims arising *solely* on the basis of vicarious liability or ostensible or apparent agen-

cy," CareFirst was not required to provide Colleton a defense at the onset of the litigation.

We recognize Grant's attorney "stipulated" during the Grant trial that his only cause of action against Colleton was a vicarious liability claim. However, the record reflects this stipulation was made as part of the settlement agreement. Thus, as of the date of the stipulation, when CareFirst arguably was required to provide a defense to Colleton, Colleton was no longer in need of a defense. *See Hartsville*, 382 S.C. at 547, 677 S.E.2d at 580 (holding that insurer had a "continuing duty to defend").

Furthermore, the settlement agreement contained the following disclaimer language:

It is understood that the Released Parties expressly deny that any negligent acts and/or omissions on their part caused or contributed to the circumstances described herein and thus they deny they are liable for any loss, injury and/or damage resulting to [Grant] because of the medical treatment. This Release and Agreement is entered into for the purpose of ending existing litigation and avoiding future litigation. Therefore, this Release and Agreement shall not be construed as an admission of liability by any or all of the Released Parties.

Therefore, we do not believe the language of the settlement agreement, which contains an explicit disclaimer as to any liability, can be construed as evidence that Colleton was *only* liable to Grant under a theory of vicarious liability. Indeed, the settlement agreement's release language further supports the conclusion that there was no adjudication of fault or lack of fault on Colleton's behalf.

Because we do not believe CareFirst breached the Agreement, it is inconsequential whether the circuit court misconstrued Colleton's breach of contract claim against CareFirst as a contractual indemnification claim. *See* Rule 220(c), SCACR (noting "[t]he appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal"). Accordingly, we decline to remand to the circuit court for further proceedings.

## III. Remaining Issues on Appeal

### A. Issue Preservation

 Colleton contends that, in a vicarious liability indemnity setting, the indemnitee should not have to prove that it was not at fault. In other words, Colleton contends that the test set forth in *Vermeer* should be modified in vicarious liability cases so that the indemnitee is not required to establish its own lack of fault. Colleton further argues that in an imputed fault vicarious liability action, proving fault on the part of the indemnitee should be by way of an affirmative defense, with the burden of doing so being placed on the indemnitor.

 We decline to address either of these issues as neither issue was properly preserved for appellate review. To be preserved for appellate review, an issue must have been "(1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." *S.C. Dep't of Transp. v. First Carolina Corp. of S .C.,* 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (citations and quotations omitted). Here, Colleton never specifically argued to the circuit court that the *Vermeer* test should be modified for vicarious liability cases. Accordingly, we believe neither issue was properly preserved. *See Bodkin v. Bodkin,* 388 S.C. 203, 219, 694 S.E.2d 230, 239 (Ct.App.2010) (an issue is not preserved for appeal unless it was raised to and ruled upon by the trial court).

### B. Additional Sustaining Grounds Raised by Respondents

The remaining issues on appeal are additional sustaining grounds raised by the Respondents, namely (1) whether the nondelegable duty doctrine set forth in *Simmons v. Tuomey Regional Medical Center,* 341 S.C. 32, 53, 533 S.E.2d 312, 323 (2000), precludes recovery by Colleton, and (2) whether Colleton is precluded from seeking equitable indemnification because its insurance company paid all of Colleton's settlement costs. We decline to address either of these issues because we affirm on other grounds appearing in the record on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court

need not address remaining issues when a decision on a prior issue is dispositive).

## CONCLUSION

For the foregoing reasons, the decision of the lower court is **AFFIRMED.**

FEW, C.J., and HUFF, J., concur.