**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rachael Dain and Jason Dain, Appellants,

v.

Horry County Department of Social Services and Jami Smith, Respondents.

In the interest of minors under the age of eighteen.

Appellate Case No. 2016-002424

———

Appeal From Horry County
Melissa J. Buckhannon, Family Court Judge

———

Unpublished Opinion No. 2018-UP-351
Submitted May 1, 2018 – Filed August 8, 2018

———

**AFFIRMED**

———

Rachael Ashley Dain, of Attorney Dain, LLC, of Columbia, for Appellants.

Carolyn R. Hills and Jennifer Darrow Hills, both of Hills & Hills, PC, of Myrtle Beach; and Megan Catherine Hunt Dell, of Dell Family Law, P.C., of Charleston, for Respondent Jami Smith.

Scarlet Bell Moore, of Greenville, for Respondent Horry County Department of Social Services.

_____

**PER CURIAM:** Rachael Dain (Grandmother) and her son, Jason Dain, (Father)[1] appeal the family court's dismissal of their action against Jami Smith (Mother) and Horry County Department of Social Services (DSS). We affirm.[2]

## FACTS/PROCEDURAL HISTORY

Father and Mother together have two children (collectively, Children) born in 2007 and 2009. On March 14, 2012, other motorists stopped Mother while she was driving and reported her to police for driving erratically and at a high rate of speed with Children in the car. She was ultimately charged with driving under the influence, child endangerment, and possession of narcotics. Father was given custody of Children, and Children visited Grandmother one weekend a month. In December of 2012, Grandmother went to California for medical treatment for two months. When she returned to South Carolina, she was confined to bedrest until April of 2013. During most of that time, she could not reach Father by telephone. When Grandmother was able to travel, she went to Horry County to visit Father and Children and discovered they had moved. At some point, Grandmother learned Father's wife, Ekaterina Dain, had alleged he committed criminal domestic violence (CDV) and as a result, Children were placed in the care of Father's half-sister. Police later dropped the CDV charge, and DSS determined the case was unfounded. In June of 2013, DSS received custody of Children and placed them in foster care. Father failed drug tests performed after Children's removal. Around October of 2013, DSS returned Children to Mother.

On December 27, 2013, Grandmother filed a motion to intervene in the DSS action against Mother and Father and an amended third-party complaint, both requesting visitation with Children. On January 31, 2014, the family court consolidated Grandmother's action with the DSS action. The family court stated it would not rule on visitation and left it to "the discretion of the person with placement of [Children] at the time." The court ordered the matter be scheduled for mediation on April 4, 2014.

_____

[1] Grandmother is an attorney licensed in South Carolina and represents herself and Father on appeal.
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

On January 21, 2015, Grandmother orally withdrew her request for relief and moved to have her complaint dismissed prior to the start of a hearing. The family court granted her request. Mother and Father informed the court prior to the hearing they had reached an agreement for Mother to receive legal and physical custody and Father to have reasonable visitation.

On March 3, 2015, DSS became reinvolved with Children following an incident in which one of Children alleged Mother cut the child's stomach with a knife. Mother was arrested for unlawful conduct towards a child. Children were not taken into emergency protective custody but were placed with a protector, Mother's sister, via a safety plan.

On April 6, 2015, the family court issued the order for the January 21, 2015 hearing, finding DSS had made reasonable efforts to assist Mother and Father in remedying the condition that resulted in Children entering foster care. The family court approved Mother and Father's agreement that Mother receive legal and physical custody and Father have reasonable visitation. Additionally, the family court found Mother and Father "agree[d] that if ever there are issues with visitation that they cannot resolve between them[,] they shall participate in mediation prior to filing an action with the [c]ourt" and ordered them to participate in at least one three-hour mediation session prior to filing an action with the court "[i]n the event there are issues regarding visitation between" them they cannot resolve.

DSS offered treatment services in August of 2015, Mother complied with those services, and Children were returned to her.

On March 23, 2016, Appellants filed a complaint in the family court against Mother and Horry County DSS. Appellants requested the case be transferred to a DSS office in a county other than Horry County, asserting Horry County DSS had been grossly negligent and engaged in misconduct. Appellants also alleged Mother was unfit to have physical or legal custody of Children. They contended Mother abused and neglected Children and was currently facing felony child abuse charges. Appellants asserted Grandmother was the best placement for Children at the time. On May 20, 2016, Mother filed a motion to dismiss Appellants' complaint.

DSS removed the safety plan and closed treatment services on May 26, 2016. DSS found Mother had acted appropriately.

The family court held a hearing on May 31, 2016. On September 6, 2016, the family court issued an order granting Mother's motion to dismiss Appellants' complaint. The family court found Grandmother failed to plead Father was an unfit parent but noted Appellants' attorney had admitted during the hearing Father was not in a position to have custody. The court determined Grandmother lacked standing to request relief. The court further found Grandmother failed to state a prima facie case she is Children's psychological parent or de facto custodian. The family court also concluded Father failed to comply with the mandate of the court he must "seek mediation prior to filing an action against [Mother]." Appellants filed a motion for reconsideration, which the family court denied. This appeal followed.

## STANDARD OF REVIEW

An appellate court reviews decisions of the family court de novo. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Appellate courts generally recognize the superior position the family court is in to make credibility determinations. *Id.* at 392, 709 S.E.2d at 655. The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

## I.  Standing

Initially, Mother contends because Grandmother did not appeal the family court's finding she lacked standing, that ruling is the law of the case and requires affirming Grandmother's appeal. Appellants argue in their reply brief the family court's finding regarding standing does not affect Father's appeal. Further, in their reply brief, they contend Grandmother does have standing.

"An appellant may not use . . . the reply brief as a vehicle to argue issues not argued in the appellant's brief." *Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989). "[An] unappealed ruling is the law of the case and requires affirmance." *Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653-54 (2006). "The appellate court may affirm any ruling, order, decision[,] or judgment upon any ground(s) appearing in the Record on Appeal." Rule 220(c), SCACR.

"Standing refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right." *S.C. Dep't of Soc. Servs. v. Boulware*, 422 S.C. 1, 7, 809 S.E.2d 223, 226 (2018) (quoting *Michael P. v. Greenville Cty. Dep't of Soc. Servs.*, 385 S.C. 407, 415, 684 S.E.2d 211, 215 (Ct. App. 2009)). "Prior to commencing an action, a party must possess standing either 'by statute, through the principles of constitutional standing, or through the public importance exception.'" *Id.* (quoting *Youngblood v. S.C. Dep't of Soc. Servs.*, 402 S.C. 311, 317, 741 S.E.2d 515, 518 (2013)). "Statutory standing exists 'when a statute confers a right to sue on a party, and determining whether a statute confers standing is an exercise in statutory interpretation.'" *Id.* (quoting *Youngblood*, 402 S.C. at 317, 741 S.E.2d at 518).

Appellants' failure to raise until the reply brief the family court's ruling Grandmother lacked standing renders the family court's ruling on that matter the law of the case and thus bars us from considering any issues on appeal relating to Grandmother. However, Appellants are correct the failure to appeal Grandmother's lack of standing does not affect any of the issues raised on appeal in regards to Father. Accordingly, we will consider Father's issues.

## II. Failure to Mediate

Appellants maintain the family court erred in finding the prior order deciding custody required Father to mediate before bringing this action. They contend because the prior order only required Father to mediate issues about visitation and custody is different from visitation, he was not required to meditate. We agree but affirm the family court's decision on other grounds.

Custody is defined as "[t]he care, control, and maintenance of a child awarded by a court to a responsible adult." *Custody*, Black's Law Dictionary (10th ed. 2014). Visitation is defined as "[a] relative's, esp[ecially] a noncustodial parent's, period of access to a child." *Visitation*, Black's Law Dictionary (10th ed. 2014). "Under the penumbra of custody is the lesser included right to visitation." *Middleton v. Johnson*, 369 S.C. 585, 594, 633 S.E.2d 162, 167 (Ct. App. 2006).

The family court erred in finding the prior family court order required Father to meditate prior to filing an action for custody. The prior order specifically found Mother and Father "agree[d] that if ever there are issues with *visitation* that they cannot resolve between them[,] they shall participate in mediation prior to filing an action with the [c]ourt" and ordered them to participate in mediation prior to filing an action with the court "[i]n the event there are issues regarding *visitation*

between" them. (emphases added). Although the complaint does request Mother only have supervised visitation and proposes visitation with second-degree relatives, the primary issues here concern Mother's custody and changing the DSS office handling Children's case. The term visitation does not encompass custody, and thus, the family court erred in dismissing the action for Father's failure to seek mediation. However, we can affirm the family court's order on other grounds found in the record. *See Walterboro Cmty. Hosp. v. Meacher*, 392 S.C. 479, 489, 709 S.E.2d 71, 76 (Ct. App. 2011) ("[W]e can affirm for any reason appearing (or, in this case, failing to appear) in the record.").

"In order for a court to grant a change of custody based on changed circumstances, the party seeking the change must meet the burden of showing changed circumstances occurring subsequent to the entry of the order in question." *Shirley v. Shirley*, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000). "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child will be served by the change." *Id.* (quoting *Pitt v. Olds*, 333 S.C. 478, 481, 511 S.E.2d 60, 61 (1999)). "The circumstances warranting a change in custody must occur after the date of the original custody order." *Id.* "This change of circumstances must be such that it would substantially affect the interests and welfare of the children, not merely the parties, their wishes, or their convenience." *Walrath v. Pope*, 384 S.C. 101, 105, 681 S.E.2d 602, 605 (Ct. App. 2009). "[W]hen a change in custody is sought by the noncustodial parent, that parent must establish (1) there has been a substantial change in circumstances affecting the welfare of the children and (2) a change in custody is in the overall best interests of the children." *Id.* "[T]he moving party [must] show that the welfare of the [children] requires the court to ignore and set aside the agreement of the parties incorporated in the decree." *Id.* (second alteration by court) (quoting *Sharpe v. Sharpe*, 256 S.C. 517, 521, 183 S.E.2d 325, 327 (1971)). "There exist no hard and fast rules for determining when to change custody and the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Shirley*, 342 S.C. at 330, 536 S.E.2d at 430 (quoting *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975)). "In the absence of a change of circumstances affecting the welfare of the child, a final decree of divorce awarding custody in accordance with an agreement of the parties is conclusive between them." *Pitt*, 333 S.C. at 481, 511 S.E.2d at 61.

All of the allegations Appellants raised relate to behavior by Mother that occurred before the prior order was issued. Some of the alleged behavior occurred before the prior hearing was held and before the previous pleadings were filed.

Additionally, Grandmother intervened in a prior action with Mother, Father, and DSS and voluntarily withdrew. Appellants have not alleged any behavior by Mother that occurred after the final order. Thus, Appellants have not met their burden in proving a change in circumstances.

The South Carolina Rules of Civil Procedure apply "in domestic relations actions to the extent permitted by Rule 81, SCRCP." Rule 2(a), SCRFC. However, the family court rules provide some of those rules are inapplicable, including Rule "54(c)[, SCRCP,] *to the extent it permits the court to grant relief not requested in the pleadings*." Rule 2(a), SCRFC (emphasis added); *see also* 15 S.C. Jur. *Appeal and Error* § 77 (1992) ("Although the civil procedure amendment rule applies in family court, the family court rules prohibit granting relief not requested in the pleadings." (footnote omitted)).

However, in "domestic cases, the failure to plead is not a fatal deficiency when the parties try an issue by consent, express or implied." 15 S.C. Jur. *Appeal and Error* § 77. "Trial by consent depends on whether the parties recognized that the nonpleaded issue entered the case during the trial." *Id.* In *Hudson v. Hudson*, 340 S.C. 198, 201, 530 S.E.2d 400, 401 (Ct. App. 2000), the respondent contended an issue was unpreserved for review because the appellant did not mention the issue in his pleadings to the family court. However, this court found the issue "was tried before the [family] court without objection. Therefore, the" court could consider the issue. *Id.* at 201, 530 S.E.2d at 401-02 (citing Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.")).

In this case, Appellants did not specifically plead a change in circumstances, but at the hearing, their attorney argued: "I think when there are substantial changes in circumstances such as an incident like what is alleged to have occurred . . . . " Appellants also did not plead in their complaint Father was unfit but Appellants' attorney at the hearing admitted Father was not in a position to take care of Children because he was working on his sobriety and lacked suitable housing. Appellants contend trial counsel argued they should be allowed to amend their pleadings to conform to the facts and this amounts to an allegation that Father is unfit. Appellants argue in their reply brief that "given the argument at trial, to which Respondents have acquiesced by failing to argue to the contrary, the

pleadings have conformed to the evidence that Father was unfit due to his inability to provide the children housing.  Appellants were clearly entitled to amend their pleadings to conform to the evidence."  Appellants in their motion for reconsideration stated, "As the biological father, [Father] requested [Grandmother] be granted custody of the children because he presently did not have appropriate housing.  In that respect alone, [Father] was unfit to have custody at the time of the hearing."  As Appellants assert Father was unfit, the family court did not err in failing to award him custody.  Because Appellants failed to appeal the family court's finding Grandmother lacked standing and they have admitted Father is unfit, there is no other avenue on which for either to obtain custody.[3]  Accordingly, we affirm the family's court decision to not award Father custody.

## III.  Harassment Finding

Appellants contend the family court erred in finding Grandmother was using the judicial system to harass Mother.  They contend because Grandmother practices law in the area of family law, the finding is harmful to her career as it calls into question her credibility.

"An error not shown to be prejudicial does not constitute grounds for reversal." *Davis v. Davis*, 372 S.C. 64, 87, 641 S.E.2d 446, 458 (Ct. App. 2006) (quoting *Brown v. Pearson*, 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct. App. 1997)).  "An error is not reversible unless it is material and prejudicial to the substantial rights of the appellant." *Id.* (quoting *Visual Graphics Leasing Corp. v. Lucia*, 311 S.C. 484, 489, 429 S.E.2d 839, 841 (Ct. App. 1993)).  "Appellate courts recognize—or at least they should recognize—an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987).

The family court stated, "The [c]ourt has strong concerns that [Grandmother] is using the court system as a way to harass [Mother]."  This is not an outright finding that Grandmother is using the court system to harass Mother, just a possibility.  Further, this was not the reason the family court dismissed the

---

[3] The psychological parent and de facto custodian concepts would only apply to Grandmother as Father is a biological parent, and Appellants do not appeal the family court's findings that Grandmother is not a psychological parent or de facto custodian.  Accordingly, we do not address these issues. *See Ex parte Morris*, 367 S.C. at 65, 624 S.E.2d at 653-54 ("[An] unappealed ruling is the law of the case and requires affirmance.").

complaint.  Therefore, Appellants were not prejudiced in this case by it.  The only prejudice alleged is that Grandmother's career will be damaged.  However, Grandmother provides nothing to support this other than her assertions.  None of the cases cited by Appellants concern findings by courts negatively affecting attorneys' careers.  Accordingly, the family court's statement does not warrant reversal.

**CONCLUSION**

Based on the foregoing, the family court's order is

**AFFIRMED.**

**LOCKEMY, C.J., and WILLIAMS and KONDUROS, JJ., concur.**